THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THE MENDHAM METHODIST
CHURCH; and THE ZION
LUTHERAN CHURCH LONG
VALLEY,

        Plaintiffs,

    v.

MORRIS COUNTY, NEW
JERSEY; MORRIS COUNTY
BOARD OF COUNTY
COMMISSIONERS; MORRIS
COUNTY HISTORIC
PRESERVATION TRUST
FUND REVIEW BOARD; and
JOHN KRICKUS, in his official
capacity as Commissioner
Director for the Morris County
Board of County
Commissioners,

        Defendants.

Case No.
2:23-cv-02347-EP-JSA

First Amended Complaint for
Declaratory and Injunctive
Relief and Compensatory
Damages

## FIRST AMENDED COMPLAINT

Plaintiffs The Mendham Methodist Church and The Zion

Lutheran Church Long Valley, by and through the undersigned

counsel, for their First Amended Complaint against Defendants

Morris County, Morris County Board of County Commissioners, Morris County Historic Preservation Trust Fund Review Board, and John Krickus, state as follows:

## INTRODUCTION

1.     This 42 U.S.C. § 1983 case challenges the application of Article I, Paragraph 3 (the Religious Aid Clause) of the New Jersey Constitution to exclude religious organizations from eligibility for generally available historic preservation grants as a violation of the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection and Due Process Clauses.

2.     Defendants administer a Historic Preservation Trust Fund (the Fund), funded by a county property tax. Through this grant program, Morris County distributes money to eligible organizations for the repair, restoration, and preservation of historic local buildings and resources.

3.     From the Fund's inception in 2003 until as recently as 2017, churches and religious organizations with historical significance were eligible for—and in fact received—funding.

2

4.    In 2018, however, the New Jersey Supreme Court concluded that the Religious Aid Clause of the New Jersey Constitution bars state and local governments from providing grants to preserve the architecture of historic churches. *Freedom From Religion Found. v. Morris Cnty. Bd. of Chosen Freeholders*, 181 A.3d 992, 994 (N.J. 2018).

5.    In the wake of that decision, Plaintiffs—two churches in Morris County—applied for grants to repair their historic church buildings, but Defendants rejected their applications, stating that a church is "ineligible" for funding if it is "currently used for religious purposes or functions."

6.    This is unconstitutional discrimination on the basis of religion: States and local governments that choose to provide a generally available public benefit—such as historic preservation grants—cannot exclude an otherwise-qualified applicant solely because the applicant happens to be a house of worship. *See Carson v. Makin*, 142 S. Ct. 1987, 1996 (2022) ("[A] State violates the Free Exercise Clause when it excludes religious observers from

otherwise available public benefits."); *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2262 (2020) ("When the [state] [c]ourt was called upon to apply a state law no-aid provision to exclude religious schools from the [state's scholarship] program, it was obligated by the Federal Constitution to reject the invitation."); *see also Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017) (holding that a religious entity is a "member of the community too, and the State's decision to exclude it for purposes of [a] public program must withstand the strictest scrutiny").

7.     Shortly before the New Jersey Supreme Court decided *Freedom From Religion Foundation*, the United States Supreme Court in *Trinity Lutheran* found unconstitutional Missouri's application of its state constitution to exclude churches from a generally available grant program. 137 S. Ct. at 2021–24. The Court held that "the refusal to allow [a church]—solely because it is a church—to compete with secular organizations for a grant" constitutes an "express discrimination against religious exercise." *Id.* at 2022.

8.    After the New Jersey Supreme Court decided *Freedom From Religion Foundation*, the United States Supreme Court held in *Espinoza* that application of the Montana Constitution's no-aid provision—which prohibited aid to schools controlled by a church—to exclude religious schools from public benefits was unconstitutional discrimination based on religion. 140 S. Ct. at 2255–57.

9.    Both *Trinity Lutheran* and *Espinoza* addressed "religious status and not religious use." *Id.* at 2256; *Trinity Lutheran*, 137 S. Ct. at 2024 n.3. And this potential distinction between discrimination on the basis of religious status and religious use, taken in part from *Locke v. Davey*, 540 U.S. 712 (2004), steered the New Jersey Supreme Court's own decision in *Freedom From Religion Foundation. See* 181 A.3d at 1009–10 (concluding that, because "the public funds awarded in [Morris County] actually went toward 'religious uses,'" the grant program "constitute[d] an impermissible religious use of public funds").

10.   But the United States Supreme Court has since made clear that the New Jersey Supreme Court misread *Locke*. In *Carson*, the Court flatly rejected a status-use distinction. 142 S. Ct. at 2002 ("*Locke* cannot be read beyond its narrow focus . . . to generally authorize the State to exclude religious persons from the enjoyment of public benefits on the basis of their anticipated religious use of the benefits."). And the Court dispelled any notion that *Trinity Lutheran* and *Espinoza* themselves established a status-use distinction, because "those decisions never suggested that use-based discrimination is any less offensive" than status-based discrimination. *Id.* at 2001.

11.   Indeed, the Court underscored both that "any status-use distinction lacks a meaningful application not only in theory, but in practice as well," and that "[a]ny attempt to give effect to such a distinction . . . would also raise serious concerns about state entanglement with religion and denominational favoritism." *Id.*; *cf.* *Espinoza*, 140 S. Ct. at 2256 ("Status-based discrimination remains

status based even if one of its goals or effects is preventing religious organizations from putting aid to religious uses.").

12.     Simply put, excluding otherwise-eligible religious organizations from public benefits solely because of the organizations' religious exercise is "pure discrimination against religion." *Morris Cnty. Bd. of Chosen Freeholders v. Freedom From Religion Found.*, 139 S. Ct. 909, 911 (2019) (statement of Kavanaugh, J., respecting denial of certiorari).

13.     These recent decisions make this an easy case: Morris County—under the guise of enforcing the Religious Aid Clause of the New Jersey Constitution—excludes otherwise-eligible churches from receiving grants through the Fund solely because their architecturally significant church buildings are used for religious purposes.

14.     This exclusion discriminates against religion and penalizes Plaintiffs' free exercise of their religion. That is repugnant to the text and spirit of the First and Fourteenth Amendments, and it is unlawful.

15. In rendering judgment for Plaintiffs, the Court should therefore uphold the fundamental constitutional principle of religious equality—that excluding religious organizations from generally available government programs is pure discrimination against religion in violation of the Free Exercise Clause of the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

## THE PARTIES

16. Plaintiff The Mendham Methodist Church is a Christian church located in the township of Mendham, Morris County, New Jersey.

17. Plaintiff The Zion Lutheran Church Long Valley is a Christian church located in the census-designated place of Long Valley, Washington Township, Morris County, New Jersey.

18. Defendant Morris County, New Jersey administers a Historic Preservation Trust Fund to support the preservation of the County's historic architecture.

19.     Defendant     Morris     County     Board     of     County
Commissioners created the Morris County Historic Preservation
Trust Fund to support the preservation of the County's historic
architectural heritage. The Board of County Commissioners has the
final say on which applicants receive grant awards from the
County.

20.     Defendant     Morris     County     Board     of     County
Commissioners is responsible for enforcing—and does enforce—the
Religious Aid Clause as it is applied in the allocation of historic
preservation funds.

21.     Defendant Morris County Historic Preservation Trust
Fund     Review     Board     reviews,     prioritizes,     and     makes
recommendations     to     the     Morris     County     Board     of     County
Commissioners on the funding of historic preservation projects
under the Morris County Historic Preservation Trust Fund.

22.     Defendant John Krickus is the Commissioner Director
for the Morris County Board of County Commissioners and is sued
in his official capacity.

9

23.    Defendant Krickus oversees the Morris County Historic Preservation Trust Fund through its relationship to the Morris County Office of Planning & Preservation and the Board of County Commissioners.

## JURISDICTION AND VENUE

24.    This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiffs' claims arise under 42 U.S.C. § 1983 and the United States Constitution, and Plaintiffs' action seeks a declaration that Article 1, Paragraph 3—the Religious Aid Clause—of the New Jersey Constitution and an implementing county rule—Rule 5.6.4 of the rules governing the Morris County Historic Preservation Trust Fund—violate the federal Constitution as applied to Plaintiffs' exclusion from the historic preservation grant program, as well as an injunction enjoining Defendants from enforcing the Religious Aid Clause and the Rule to exclude religious organizations from eligibility for the historic preservation grant program, and enjoining Defendants from otherwise denying a grant of historic preservation funds to

religious organizations based solely on their religious affiliation or exercise.

25.    This Court has the authority to grant declaratory and injunctive relief under the Declaratory Judgment Act and this Court's inherent equitable powers. 28 U.S.C §§ 2201, 2202.

26.    Venue is proper in this district because the events giving rise to Plaintiffs' claims occurred within it. 28 U.S.C. § 1391(b)(2).

## BACKGROUND

### I.    The Mendham Methodist Church and the Historical Significance of Its Building

27.    Plaintiff The Mendham Methodist Church (or "Mendham Methodist") began as the Mendham Methodist Episcopal Church in New Jersey in the early nineteenth century.

28.    The church's early members erected their first house of worship in 1833. Half a century later, it officially incorporated as a church.

29.    In 1893, church members moved the original building to 10 East Main Street in the city of Mendham, New Jersey, where it

has stood ever since. During this relocation, church members themselves hauled and laid the stone that still supports the structure of the building today.

30.     Decades later, after the United Methodist denomination was founded, the Mendham Methodist Episcopal Church officially became The Mendham Methodist Church and affiliated itself with the United Methodist denomination.

31.     Today, Mendham Methodist has a small congregation with about ten members attending any given service. Roughly half of the regularly attending members are elderly.

32.     Mendham Methodist's church building sits on a main road, Route 24, which runs through the city of Mendham. The building is in the center of the Mendham Historic District, surrounded by nearby churches, restaurants, and shops. Given its location, numerous pedestrians and drivers pass by the historic church building each day.

33.     Mendham Methodist prides itself on its involvement with the Mendham community. Aside from its worship services,

Mendham Methodist hosts various events open to the public: the church currently hosts a thrift shop in the building twice a month; a music instructor uses the building to provide community music lessons; and the church previously held a holiday jazz concert for the public.

34.    Prior to the COVID-19 pandemic, the church hosted weekly Alcoholics Anonymous meetings. Although the pandemic forced the church to temporarily stop hosting the meetings, the church hopes to resume these meetings and other similar community events soon.

35.    Mendham Methodist's building—the site for all of these events—has recognized historical significance. As noted, the church building is part of the Mendham Historic District, which is listed on both the State and National Registers of Historic Places.

36.    In fact, Mendham Methodist recently sold a piece of open property behind the church building to the Town of Mendham. As an undeveloped, historic property, the piece of land cannot be developed.

37.     For more than 175 years, Mendham Methodist's church building has retained many of its notable architectural features, including a prominent bell tower, stained-glass windows, and its original frame.

38.     Nevertheless, the church building needs repair. It needs a new roof and foundation repair, the building and bell tower need new paint, the main stained-glass window needs to be re-leaded, the chimney needs to be repaired, and the siding on the bell tower needs to be replaced.

39.     Of those needs, the most pressing need is the need for a new roof. The roof has weathered to the point that water leaks into the church building when it rains (image depicted to the right).



40.     For a stretch of time, church members had to drape drop cloths over pews that were affected by roof leaks and

place buckets throughout the church to catch excess water during multiple services.

41.    As a temporary fix, the church stretched its funds to hire a roofer to patch problematic areas. The church does not have the money to completely replace the whole roof, but if the work is not completed soon, the leaks will cause more serious, reoccurring problems.

42.    Further, issues with the church's foundation have caused leakage not only in the main church hall, but also in the church basement (image depicted to the right).  Recently, a wall in the basement collapsed, causing stones and dirt to invade the building (image depicted to the right). This collapse has called into question the existing structural integrity of the building's foundation.

43.   Mendham United Methodist is also concerned with preserving and repairing its bell tower. Passersby in front of the church can see the damage to the bell tower's siding (image depicted to the right). Given that the bell tower is a focal point of the building's historic architecture, it is important that the tower be repaired before the damage increases.



## II.   The Zion Lutheran Church Long Valley and the Historical Significance of Its Building

44.   Plaintiff The Zion Lutheran Church Long Valley (or "Zion Lutheran") is a congregation of the Evangelical Lutheran Church in America, originally founded in 1760 as the Old Union Stone Church.

45.   Built in 1774 on Fairview Avenue in German Valley, the Old Union Stone Church served as the original meeting place for Lutherans in the area.

16

46.     Since its early days, Zion Lutheran has attracted noteworthy guests. For instance, one of the most influential ministers of the eighteenth century, Henry M. Muhlenberg, Jr.—a German minister who helped found the Lutheran Church in America—frequently came to Long Valley to preach at Zion Lutheran.

47.     On June 11, 1832, the cornerstone of Zion Lutheran's current building was laid at 11 Schooleys Mountain Road, about 500 feet up the road from the original Old Union site. The church's current building was crafted in, and still reflects, the historic Gothic Revival architectural style.

48.     Zion Lutheran has made various structural improvements to the building in hopes of preserving its rich history. In 1861, the church invested in numerous projects, including a bell tower, a narthex, a steeple, and a sanctuary enlargement. In 1938 and 1967, the church added two new halls.

49.     Today, the church has close to 100 members.

50.    The Zion Lutheran property is a part of the German Valley Historic District, a district recognized on both the State and National Registers of Historic Places for its historic significance in agriculture, education, transportation, industry, and religion.

51.    Zion Lutheran sits at a busy crossroads in town, with thousands of cars passing by the church each day. Because the church is so centrally located in the German Valley Historic District, anyone driving through the town will likely pass by the building.

52.    Zion Lutheran also has a substantial impact on its community. Like Mendham Methodist, Zion Lutheran offers community events beyond its own worship services. For example, Zion Lutheran hosts Alcoholics Anonymous meetings, Girl Scout and Cub Scout meetings, and non-denominational funerals.

53.    In one of its secondary halls, Zion Lutheran also has a non-denominational nursery school. The church does not use that hall or the nursery school for religious functions.

54. Similarly, Zion Lutheran's newly added parish center functions as a resource for the community, a place for educational programs, and a conference venue—functions which Zion Lutheran hopes will bring more visitors to the church and to Morris County.

55. In 2017, Zion Lutheran applied for, and received, $27,760 in funding from Morris County's Historic Preservation Trust Fund. *See* Zion Lutheran Church Grant (attached as Exhibit "A").

56. That funding went toward the implementation of a historic preservation plan, which entailed a total assessment of the church's structure in order to identify which areas of the building would need to be addressed first with the limited funds.

57. Ray Chang, the director of the historic preservation office, approved the 2017 grant and was instrumental in guiding the church throughout the grant application process.

58. Notwithstanding that funding, Zion Lutheran currently needs assistance to maintain the structural and historical integrity of its church building.

59.   For instance, the stucco plaster that comprises the building's 30-foot high interior walls and ceilings is cracking; the interior of the building needs new paint; the church needs to assess and potentially replace windows, including the historic stained-glass windows in the sanctuary; and the church needs to assess and potentially remediate the effects of flooding from the nearby Raritan River, including its effects on areas under the church narthex and sanctuary.

60.   Zion Lutheran cannot afford to make these extensive repairs. Due in part to COVID-19, the church has experienced financial stress.

61.   Without funding to perform necessary upkeep on the building, this 190-year-old historic building is at risk of falling into disrepair.

### III.   The Morris County Historic Preservation Trust Fund

62.   Founded in 1739, Morris County is one of the oldest counties in New Jersey. It is home to a variety of historically important buildings.

20

63.    In November 2002, Morris County voters approved a referendum authorizing the Morris County Board of Chosen Freeholders (now the Morris County Board of County Commissioners) to establish a Historic Preservation Trust Fund as part of a broader Open Space Trust Fund.[1]

64.    The goals of the Historic Preservation Trust Fund are, among other things, to ensure the continued preservation of historic resources and to heighten the public's awareness of Morris County's historic character.[2]

65.    The Historic Preservation Trust Fund operates as allowed by state law under a delegation of authority from the New Jersey State Historic Preservation Office.[3]

---

[1] Morris County Preservation Trust Fund – Rules & Regulations § 5.2 (June 22, 2022), https://www.morriscountynj.gov/files/sharedassets/public/departments/planning-amp-preservation-historic/combined-rules-6-22-22.pdf.

[2] *Id.* § 5.1.

[3] *Id.* §§ 5.2, 5.8.

66.     As such, its rules and regulations follow the form of the state program administered by the New Jersey Historic Trust.[4] The program thus requires applicants to submit detailed documentation establishing the historic significance of the building, which entails inclusion (or certification of eligibility for inclusion) on the National or State Registers of Historic Places, either as an independent building or as a building within a listed historic district.

67.     Applicants must also detail how their proposed repairs, or other work for which the grant is sought, would enhance the historic value of their structure.[5]

68.     The applications are reviewed by a professional consultant, who then determines whether the proposed work would comply with federal standards promulgated by the U.S.

---

[4] *Id.* §§ 5.16–17.

[5] Morris County Historic Preservation Trust Fund – 2022 Preservation Planning Grant Application, https://www.morriscountynj.gov/files/sharedassets/public/departments/planning-amp-preservation-historic/2022-preservation-planning-grant-application-savable.pdf (last visited Apr. 24, 2023).

Department of the Interior, which are incorporated by reference in the rules for the Historic Preservation Trust Fund.[6]

69.    Eligible recipients of the historic preservation grants include Morris County and its municipalities, as well as privately owned "qualified charitable conservancies" (that is, any nonprofits) "whose purpose includes historic preservation."[7]

70.    A grant recipient may use its building for any number of purposes. In fact, past grant recipients have operated their eligible buildings for exclusive functions and private organizations.[8]

71.    For example, the Morristown Community Theater—a fully operating performing arts center—has received $123,945 in

---

[6] Morris County Historic Preservation Trust Fund – Rules and Regulations § 5.16.

[7] *Id.* § 5.3.

[8] Morris County Historical Preservation Fund 2022 Grants, https://morriscountynj.gov/files/sharedassets/public/main-site/newsarchive-media/2022/historic-pres-2022-grants-handout.pdf (last visited Apr. 24, 2023).

funding over the past 10 years. *See* Morristown Community Theater Funds (attached as Exhibit "B").

72.     Similarly, the Madison Masonic Lodge, which houses a private Freemasonry association in a former church building, has received $128,640 in the past 3 years, *See* Madison Masonic Lodge Funds (attached as Exhibit "C").

73.     The Woman's Club of Morristown likewise consistently receives funding. The group has received over a million dollars since 2005. *See* Woman's Club of Morristown Funds (attached as Exhibit "D").

74.     The Fund even awarded a local restaurant—The Station at Mountain Lakes, which operates out of a former train station building—$24,000 in 2022. *See* Mountain Lakes Train Station Funds (attached as Exhibit "E").

## IV.   Morris County Denies Historic Preservation Funds to Churches

75.   Historic churches, no less than historic theaters and train stations, may rightly count historic preservation as one of their purposes. Plaintiffs do so, and they meet the other program requirements for grant eligibility. Yet, Morris County has refused to even consider churches like Plaintiffs for grants solely because they also use their buildings for religious purposes.

76.   This policy is evident on the face of rules enacted in 2022 to govern the Morris County Historic Preservation Trust Fund. Under those rules, "[a]ny property that is currently used for religious purposes or functions is ineligible for Historic Preservation grant funding."[9]

77.   Morris County readily provided funding to churches— including Zion Lutheran—in years past.

---

[9] Morris County Preservation Trust Fund – Rules & Regulations § 5.6.4.

78.    In 2015, however, the Wisconsin-based Freedom From Religion Foundation (FFRF) sued Morris County in New Jersey Superior Court.

79.    FFRF argued that, under the Religious Aid Clause of the New Jersey Constitution, Morris County could not allow churches to participate in the Fund.

80.    In 2018, the New Jersey Supreme Court ruled for FFRF, concluding that the Religious Aid Clause prohibited the government from providing grants to preserve the architecture of historic churches and that the Religious Aid Clause was consistent with the First Amendment's Free Exercise Clause. *Freedom From Religion Found.*, 181 A.3d at 1012.

81.    Morris County then sought certiorari in the United States Supreme Court, which declined to review the case. *Morris Cnty.*, 139 S. Ct. at 909. In his statement respecting denial of certiorari, Justice Kavanaugh, joined by Justices Alito and Gorsuch, explained that certain open factual issues counseled against the Court's review, but emphasized that excluding a site

26

from a historic preservation program solely because it is religious creates "serious tension with this Court's religious equality precedents." *Id.* (statement of Kavanaugh, J., respecting the denial of certiorari). Indeed, "[b]arring religious organizations because they are religious from a general historic preservation grants program is pure discrimination against religion." *Id.* at 911.

82. In the meantime, the New Jersey Supreme Court's decision has taken a toll on historic New Jersey churches, and its reasoning has now been expressly repudiated by the United States Supreme Court in *Carson*.

83. Plaintiffs' church buildings face increasing decay and dilapidation, and Plaintiffs lack the funding to make necessary repairs.

84. Thus, on February 28, 2022, Mendham Methodist submitted a grant application to the Morris County Historic Preservation Trust Fund Review Board, indicating its need for historic preservation funding (attached as Exhibit "F").

85.     In its application, the church indicated that the grant would be used to re-shingle and paint the church bell tower, repave and reline the parking lot, re-lead the windows, and construct a new roof, new chimney, and new furnace.

86.     These renovations and repairs are, by their nature, for historic preservation purposes, as they would preserve the structural and external integrity of the 130-year-old building, including by protecting it from the elements.

87.     Despite these qualifications, the Morris County Office of Planning and Preservation rejected Mendham Methodist's grant application on March 3, 2022, on the ground that because Mendham Methodist's principal building is "currently used for religious purposes or functions, it is ineligible for Historic Preservation grant funding" per the Fund's rules (attached as Exhibit "G").

88.     On or about February 3, 2023, Zion Lutheran likewise submitted to the Morris County Historic Preservation Trust Fund a declaration of intent to seek funding for a remediation system that

would address the moisture problem in the narthex crawl space (attached as Exhibit "H").

89.  On February 21, 2023, Ray Chang notified Zion Lutheran that "[t]he County determines that this crawl space is considered part of the religious building and thus not eligible for funding consideration."  Chang reminded Zion Lutheran, "As you know, our rules state that 'Any property that is currently used for religious purposes or functions is ineligible for Historic Preservation grant funding'" (attached as Exhibit "I").

90.  Due to the lack of necessary funding and the consequent outstanding needs for repair, Plaintiffs' buildings have begun to lose important parts of their historic and architecturally significant character.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of the First and Fourteenth Amendments to the United States Constitution: Free Exercise Clause Intentional Discrimination and Targeting (42 U.S.C. § 1983)

91.    Plaintiffs incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

92.    Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

93.    The Free Exercise Clause of the First Amendment to the United States Constitution provides, in relevant part, that

"Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. CONST. amend. I.

94.    The Free Exercise Clause, which applies to the States and their subdivisions and municipalities under the Fourteenth Amendment, "protects religious observers against unequal treatment" and against "laws that impose special disabilities on the basis of religious status." *Trinity Lutheran*, 137 S. Ct. at 2019, 2021 (cleaned up).

95.    "[A] law targeting religious beliefs as such is never permissible." *Id.* at 2024 n.4 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)).

96.    Moreover, "the prohibition on status-based discrimination under the Free Exercise Clause is not a permission to engage in use-based discrimination." *Carson*, 142. S. Ct. at 2001.

97.    Where religious exercise is involved, state actors must proceed with "neutrality" and without "religious hostility on the part of the State." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1724 (2018).

31

98.   Defendants readily provide preservation grants to public and private organizations alike, so long as the organization or building has historic significance and plans to use the grant money for historic preservation purposes.

99.   Plaintiffs incontrovertibly meet those two requirements, given their rich histories in Morris County and express statements that they would use the funding for much-needed repairs to preserve the historic nature of their buildings.

100.   Nevertheless, as Defendants' denial letters to Plaintiffs and the rules governing the Morris County Historic Preservation Trust Fund indicate, Defendants excluded Plaintiffs from eligibility for generally available funds solely because their buildings are "currently used for religious purposes or functions."

101.   Defendants have no legitimate basis for excluding Plaintiffs from eligibility for generally available funds.

102.   Defendants excluded Plaintiffs from eligibility for a public benefit that Defendants afford to comparable nonreligious

organizations solely because of the Plaintiffs' religious character, purposes, and exercise.

103.   Defendants' requirement that eligible buildings not be used for religious purposes or functions thus constitutes intentional status- and use-based discrimination and targeting against religion in violation of the Free Exercise Clause of the First Amendment to the United States Constitution, as incorporated against Defendants through the Fourteenth Amendment, and 42 U.S.C. § 1983.

104.   Indeed, Defendants' denial letters to Plaintiffs—and the Morris County Historic Preservation Trust Fund rule that they rest upon—demonstrate that exclusion of Plaintiffs from the receipt of a public benefit was motivated by hostility toward Plaintiffs' religious beliefs and practices.

105.   Such "impl[ications] that religious beliefs and persons are less than fully welcome" runs counter to the Free Exercise Clause, which guarantees that state action remains free of "a clear and impermissible hostility toward . . . sincere religious beliefs." *Id.* at 1729.

33

106. Defendants' policy, custom, or practice—including Article 1, Paragraph 3 of the New Jersey Constitution and the county's implementing rule, Rule 5.6.4 of the rules governing the Morris County Historic Preservation Trust Fund—was the moving force of the violation of Plaintiffs' rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978) (recognizing that local government bodies "can be sued directly . . . for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" rather than merely stemming from "employ[ing] a tortfeasor").

## COUNT II

### Violation of the First and Fourteenth Amendments to the United States Constitution: Free Exercise Clause Unconstitutional Conditions (42 U.S.C. § 1983)

107. Plaintiffs incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

108. Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

109. The "unconstitutional conditions doctrine . . . vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).

110. Under this doctrine, even if the plaintiff seeks only a "discretionary benefit," or "privilege," state actors may not "condition[] receipt of [that] benefit or privilege on the relinquishment of a constitutional right." *Bourgeois v. Peters*, 387 F.3d 1303, 1324–25 (11th Cir. 2004).

111.  The United States Supreme Court has made clear that, because of the neutrality requirement of the First Amendment— incorporated against the States, their subdivisions, and municipalities through the Fourteenth Amendment—a church must be allowed "'to compete on an equal footing'" for public benefits and cannot be disqualified "solely because it is a church." *Trinity Lutheran*, 137 S. Ct. at 2022.

112.  Defendants' denial letters stated that buildings "currently used for religious purposes or functions [are] ineligible for Historic Preservation grant funding" per the Fund's rules.

113.  If Plaintiffs did not intend to use the funds to repair and preserve a house of worship, they would qualify to receive the funds.

114.  Yet, Defendants exclude Plaintiffs from eligibility for the historic preservation grants while providing funds to other private organizations and societies, such as women's clubs, restaurants, and Masonic lodges.

115.  Defendants have conditioned Plaintiffs' eligibility "to participate in an otherwise generally available public benefit

program, for which [Plaintiffs are] fully qualified," on the use of Plaintiffs' buildings for non-religious purposes or functions. *Id.* at 2024.

116.  Defendants thus condition eligibility to receive a public benefit on the relinquishment of Plaintiffs' Free Exercise rights, which "'effectively penalizes the free exercise'" of Plaintiffs' religious beliefs and practices. *Id.* at 2022.

117. Such a condition constitutes an independent constitutional violation of the neutrality requirement of the First Amendment, incorporated against Defendants through the Fourteenth Amendment. *See id.* ("The express discrimination against religious exercise here is not the denial of a grant, but rather the refusal to allow [a church]—solely because it is a church—to compete with secular organizations for a grant.").

118. Defendants' policy, custom, or practice—including Article 1, Paragraph 3 of the New Jersey Constitution and the county's implementing rule, Rule 5.6.4 of the rules governing the Morris County Historic Preservation Trust Fund—was the moving

force of the violation of Plaintiffs' rights. *See Monell*, 436 U.S. at 690–91.

## COUNT III

### Violation of First and Fourteenth Amendments to the United States Constitution: Free Exercise Clause Substantial Burden on Religious Exercise (42 U.S.C. § 1983)

119.    Plaintiffs incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

120.  Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

121. Defendants' exclusion of Plaintiffs from eligibility for historic preservation funds substantially burdens the free exercise

rights of churches seeking to preserve the historic integrity of their buildings.

122. State action "burdening religious practice must be of general applicability." *Lukumi*, 508 U.S. at 542.

123. State action is not generally applicable if it treats "*any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curium); *see also Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021) (holding that "[a] law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests"); *Lukumi*, 508 U.S. at 542–43 (holding that "inequality results when [a state or municipal entity] decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation").

124. Defendants' historic preservation program is not generally applicable.

125. By granting historic preservation funds to comparable private, non-religious organizations, while excluding Plaintiffs from eligibility because of their religious purposes, functions, and exercise, Defendants treat "comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296.

126. Defendants have no compelling, substantial, or even legitimate interest in excluding otherwise-eligible historic churches from receiving generally available grant money.

127. The New Jersey Supreme Court justified its application of the state constitution's Religious Aid Clause by pointing to the state's antiestablishment interest in not using public funds to build or repair churches. *Freedom From Religion Found.*, 181 A.3d at 1012.

128. But the United States Supreme Court has firmly held that an ostensible antiestablishment interest is not a compelling government interest sufficient to satisfy the exceedingly strict scrutiny that religious discrimination triggers. *See Carson*, 142 S. Ct. at 1998 ("[A]s we explained in both *Trinity Lutheran* and

*Espinoza*, such an 'interest in separating church and state "more fiercely" than the Federal Constitution . . . "cannot qualify as compelling" in the face of the infringement of free exercise.'") (quoting *Espinoza*, 140 S. Ct. at 2260)).

129.  Further, Defendants' requirement that applicants for funding not use the money for a building currently used for religious purposes is not narrowly tailored to achieve, nor is it rationally related to, any governmental interest Defendants may purport to have.

130.  Absent injunctive and declaratory relief against Defendants with respect to their allocation of historic preservation funding, Plaintiffs have been and will continue to be irreparably harmed.

131.  Defendants' policy, custom, or practice—including Article 1, Paragraph 3 of the New Jersey Constitution and the county's implementing rule, Rule 5.6.4 of the rules governing the Morris County Historic Preservation Trust Fund—was the moving

force of the violation of Plaintiffs' rights. *See Monell*, 436 U.S. at 690–91.

## COUNT IV

### Violation of the Fourteenth Amendment to the United States Constitution: Equal Protection Clause (42 U.S.C. § 1983)

132.  Plaintiffs incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

133.  Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

134.  The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant

part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

135.   The Equal Protection Clause applies to states and their subdivisions and municipalities.

136.  The Equal Protection Clause prohibits the government from discriminating on the basis of religion, which is a suspect classification for equal protection purposes.

137.  By excluding otherwise-eligible churches from eligibility for historic preservation grants, Defendants' historic preservation fund program discriminates on the basis of religion.

138.  Indeed, Defendants previously acknowledged in their *Freedom From Religion Foundation* summary-judgment motion that "[s]uch disparity in treatment constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment." Defendant's Motion for Summary Judgment at 14, *Freedom From Religion Found. v. Morris Cnty. Bd. of Chosen Freeholders*, No. SOM-C-12089-15 (N.J. Super. Ct. Aug. 26, 2016).

139. Defendants have no compelling, substantial, or even legitimate interest in excluding Plaintiffs from receiving the historic preservation grants.

140. Defendants' requirement prohibiting recipients of historic preservation grants from using the money for buildings used for religious purposes is not narrowly tailored to achieve, nor rationally related to, any governmental interest Defendants may purport to have.

141. Here too, Defendants admitted in *Freedom From Religion Foundation* that they could not show a sufficient interest or narrow tailoring. *Id.* ("It is self-evident that the County could not muster such proof since the goal of the program is the preservation of historical buildings, not the furtherance of the organizations occupying them.").

142. By excluding religious organizations, Defendants' historic preservation fund makes it more difficult for one group of citizens than for all others to seek aid from the government.

143. As applied to Plaintiffs, Defendants' historic preservation program discriminates on the basis of religion and therefore violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution insofar as it excludes religious organizations from eligibility for a generally available public fund for no reason other than their religious purpose and exercise. *See id.* (enforcing the Religious Aid Clause to exclude religious organizations "requires the County to deny [religious organizations] equal protection under the law").

144. Defendants' policy, custom, or practice—including Article 1, Paragraph 3 of the New Jersey Constitution and the county's implementing rule, Rule 5.6.4 of the rules governing the Morris County Historic Preservation Trust Fund—was the moving force of the violation of Plaintiffs' rights. *See Monell*, 436 U.S. at 690–91.

## COUNT V

### Violation of the Fourteenth Amendment to the United States Constitution: Due Process Clause (42 U.S.C. § 1983)

145.   Plaintiffs incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

146.   Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

147.   The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

148. The Due Process Clause applies to states and their subdivisions and municipalities.

149. Among the liberties protected by the Due Process Clause is the fundamental liberty to freely exercise one's religion.

150. As applied to Plaintiffs, the Morris County Historic Preservation Trust Fund conditions receipt of a public benefit on the forbearance of the Plaintiffs' liberty to freely exercise their religion. By prohibiting religious organizations from receiving grants, the historic preservation program forces religious organizations to either forgo the benefit of funding for much-needed repairs or forgo their right to freely exercise their religion.

151. Defendants' policy, custom, or practice—including Article 1, Paragraph 3 of the New Jersey Constitution and the county's implementing rule, Rule 5.6.4 of the rules governing the Morris County Historic Preservation Trust Fund—was the moving force of the violation of Plaintiffs' rights. *See Monell*, 436 U.S. at 690–91.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs The Mendham Methodist Church and The Zion Lutheran Church Long Valley pray for the following relief:

1. A declaration that Article 1, Paragraph 3—the Religious Aid Clause—of the New Jersey Constitution and the Morris County Historic Preservation Trust Fund Rule 5.6.4—and Defendants' application of the Religious Aid Clause and the Rule to Plaintiffs—violate the Free Exercise Clause of the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution insofar as they exclude religious organizations from eligibility for a generally available public benefit solely because of their religious purposes and exercise;

2. Permanent injunctive relief enjoining Defendants from excluding otherwise-eligible religious organizations from eligibility for the Historic Preservation Trust Fund grants;

3. An award of compensatory damages for the harm suffered from Defendants' unconstitutional exclusion of Plaintiffs from eligibility for the Historic Preservation Trust Fund grants;

4. An award of nominal damages for the harm suffered from Defendants' unconstitutional exclusion of Plaintiffs from eligibility for the Historic Preservation Trust Fund grants;

5. An award of all costs and attorneys' fees pursuant to any applicable statute or authority, including 42 U.S.C. § 1988; and

6. Any other relief this Court deems just and proper.

Dated:  July 14, 2023                    Respectfully submitted,


                                         */s  Mark Roselli*
                                         Mark Roselli
                                         Roselli Griegel Lozier &
                                         Lazarro, PC
                                         1337 Highway 33
                                         Hamilton, New Jersey 08690
                                         Telephone: (609) 586-2257
                                         mroselli@roselligriegel.com

                                         Noel J. Francisco
                                         (application *pro hac vice*
                                         forthcoming)
                                         Megan Lacy Owen
                                         (application *pro hac vice*
                                         forthcoming)
                                         JONES DAY
                                         51 Louisiana Avenue, N.W.
                                         Washington, D.C. 20001
                                         Telephone: (202) 879-3939
                                         njfrancisco@jonesday.com
                                         mlacyowen@jonesday.com

                                         J. Benjamin Aguiñaga
                                         (application *pro hac vice*
                                         forthcoming)
                                         JONES DAY
                                         2727 North Harwood Street
                                         Suite 500
                                         Dallas, Texas 75201
                                         Telephone: (214) 220-3939
                                         jbaguinaga@jonesday.com

Jeremy Dys
(application *pro hac vice*
forthcoming)
Ryan Gardner (application *pro
hac vice* forthcoming)
First Liberty Institute
2001 W. Plano Pkwy, Suite 1600
Plano, TX 75075
Telephone: (972) 941-4444
jdys@firstliberty.org
rgardner@firstliberty.org

Eric C. Rassbach
(application *pro hac vice*
forthcoming)
The Hugh and Hazel Darling
Foundation Religious Liberty
Clinic
Pepperdine University Caruso
School of Law
24225 Pacific Coast Highway
Malibu, CA 90263
Telephone: (310) 506-4611
eric.rassbach@pepperdine.edu

*Attorneys for Plaintiffs*
*The Mendham Methodist*
*Church and*
*The Zion Lutheran Church Long*
*Valley*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2023, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

July 14, 2023                                         *s/ Mark Roselli*

52