# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE MENDHAM METHODIST CHURCH; and THE ZION LUTHERAN CHURCH LONG VALLEY, <br><br> Plaintiffs, <br><br> v. <br><br> MORRIS COUNTY, NEW JERSEY et al., <br><br> Defendants. | Civil Action No. 2:23-cv-02347-EP-JSA <br><br> Plaintiffs' Opposition to Freedom From Religion Foundation's Motion to Intervene |

Plaintiffs hereby oppose Proposed-Intervenors Freedom From Religion Foundation and David Steketee's ("Movants") motion to intervene, ECF No. 16, and brief in support of intervention, ECF No. 16-1 ("Br."), and state as follows:

## INTRODUCTION

Movants seek to intervene in this litigation based on their claimed interest in preserving the New Jersey Supreme Court's decision in *Freedom From Religion Foundation v. Morris County Board of Chosen Freeholders*, 181 A.3d 992 (N.J. 2018) ("*FFRF*"). In *FFRF*, the New Jersey Supreme Court held that the New Jersey Constitution's Religious Aid Clause prohibits Morris County from awarding historic preservation grant funding to churches. In this case, Plaintiffs contend that Morris County's religious exclusion policy violates the First Amendment to the federal Constitution. According to Movants, their "rights" were "determined" as plaintiffs in *FFRF*, and this lawsuit "seeks to abrogate" those rights. Br. 2. They thus claim to "have the right to be heard in defense of their rights." *Id.*

The Court should deny Movants' motion to intervene. Movants do not satisfy the requirements for intervention as of right under Federal

Rule of Civil Procedure 24(a), both because they have no legally protectable interest in the *FFRF* opinion and because, in any event, they have not carried their burden to show that the County inadequately represents their interests. Permissive intervention under Rule 24(b) is likewise unwarranted for similar reasons.

Plaintiffs do not oppose Movants' participation as *amici curiae*, which would permit them to be heard without unduly delaying this litigation. But intervention itself is unwarranted. In the alternative, if the Court is inclined to grant intervention, Plaintiffs respectfully request that the Court limit any discovery and disruption to the case schedule as set forth in Section C.

### A.  Movants Are Not Entitled to Intervene As of Right.

Rule 24(a)(2) provides that, "[o]n timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *Liberty Mut. Ins. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005); *see also*

*Donaldson v. United States*, 400 U.S. 517, 531 (1971) (reserving intervention for those with "a significantly protectable interest" in litigation beyond a mere "taxpayer's interest.").[1] Here, Movants have shown neither a sufficiently specific interest in this litigation nor inadequate representation.

**1.** "A proposed intervenor must demonstrate that its interest is 'specific to [it] [and] is capable of definition.'" *Corman v. Sec'y of Commonwealth of Pa.*, 751 F. App'x 157, 160 (3d Cir. 2018) (per curiam) (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998)). Put differently, the proposed intervenor must show "a tangible threat to a legally cognizable interest," and that interest must be "one belonging to or being owned by the proposed intervenor." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder*, 72 F.3d 361, 366 (3d Cir. 1995) (citation omitted).

Movants have no such interest here. They first suggest that they have a legally cognizable interest in the *FFRF* opinion itself. *See* Br. 3.

---

[1] Rule 24(a)(1) also establishes intervention as a matter of right where a proposed intervenor "is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Movants do not invoke this provision or claim to hold such a right.

But the *FFRF* opinion does not "belong[] to" Movants, nor do they "own[]" it. *Mountain Top Condo. Ass'n*, 72 F.3d at 366. While of course, as Movants note, *FFRF* ended with "a judgment in their favor," Br. 3, that decision turned on "a pure question of law" affecting all New Jersey residents, 181 A.3d at 997—the intersection of the federal Free Exercise Clause and the New Jersey Constitution's Religious Aid Clause—with virtually nothing to do with Movants other than that they happened to be the plaintiffs who sued. That distinguishes this case from *Pennsylvania v. United States*, where the intervenors sought to defend a federal rulemaking designed to provide a "specific policy resolution" for the particular Free Exercise violations those intervenors had previously alleged in litigation. 888 F.3d 52, 58 (3d Cir. 2018); *cf.* Br. 3.

Moreover, Movants cannot claim any interest with respect to the specific Plaintiff churches in this case, as they were not litigants in *FFRF*. Movants did sue twelve *other* churches in *FFRF* for having accepted historic preservation grants from the County. *See FFRF*, 181 A.3d at 996. But the lack of any overlap between the prior defendants and the Plaintiffs here means the identity of the litigants does not provide Movants any protectable interest in this case. The mere fact that a

4

proposed intervenor previously obtained a judgment against a government defendant does not give it a right to intervene every time *someone else* sues that same government defendant. Movants offer no authority for that proposition, which would cause chaos in government-related litigation. *Cf. Nebraska v. Wyoming*, 515 U.S. 1, 21–22 (1995) ("A State is presumed to speak in the best interest of [its] citizens."); *New Jersey v. New York*, 345 U.S. 369, 373 (1953) (per curiam) (requiring intervenor to show "some compelling interest in his own right" beyond the general interest of "all other citizens" by showing that those interests are "not properly represented" before permitting intervention in suit against state actor).

Nor do Movants' asserted general antiestablishment interests justify intervention. Br. 5. Movants cannot seek to protect against any violation of the federal Establishment Clause under *FFRF* because that opinion specifically did "not reach the question" whether the federal Establishment Clause permits the provision of preservation grant funds to churches. *See* 181 A.3d at 1013. To the extent Movants rely on a more generalized antiestablishment interest in preventing Plaintiffs from receiving grant funding, that interest is not legally cognizable. As the

5

Supreme Court recently held, "[a] State's antiestablishment interest does not justify enactments that exclude some members of the community from an otherwise generally available public benefit because of their religious exercise." *Carson v. Makin*, 142 S. Ct. 1987, 1998 (2022); *see also Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2417, 2420, 2427 (2022) (explaining that the Supreme Court has "abandoned" *Lemon v. Kurtzman*, 403 U.S. 602 (1971), and rejecting Establishment Clause defense based on a "reasonable observer['s]" potential perceived "endorse[ment]" of religion). If a State may not discriminate against religion based on a purported antiestablishment interest, a proposed intervenor may not secure intervention as of right based on the same illegitimate interest.

**2.** Even if Movants held a specific and legally cognizable interest, intervention as of right would also be inappropriate for the independent reason that they have not carried their burden to show that existing parties do not adequately represent their interests. Movants' burden to show inadequate representation "may be discharged in two ways." *Hoots v. Commonwealth of Pa.*, 672 F.2d 1133, 1135 (3d Cir. 1982). First, they "may demonstrate that [their] interests, though similar to those of an

existing party, are nevertheless sufficiently different that the representative cannot give the applicant's interests proper attention." *Id.* Second, they "may establish collusion between the representative and an opposing party, or an indication that the representative has not been diligent in prosecuting the litigation." *Id.* Movants have failed to make either showing here.

First, while Movants principally criticize the County's past defense of treating churches equally in the County's grant program, Br. 4–5, they contend that the County is now bound to follow "the controlling ruling of the New Jersey Supreme Court" in *FFRF* by excluding Plaintiffs from the grant program, *id.* at 5. And the stipulated facts show that the County in fact *does* follow that ruling in denying churches' eligibility for grant funds on the basis of religious use. *See* Dkt. 18-2 at ¶¶ 39-40, 44-46.

Movants' argument that a defense of this suit based on a "need to comply with" *FFRF* "may" be "superficial[]," Br. 5, does not carry their burden to show inadequate representation. Neither Movants nor Plaintiffs know what arguments the County will make in response to Plaintiffs' Free Exercise challenge to its policy, and the County did not identify such arguments in its letter taking no position on intervention.

7

*See* Dkt. 20. But in any event, even assuming the County does not make Movants' preferred arguments in defense of its policy, "movant-intervenors' interest in making an additional constitutional argument in defense of government action does not render the government's representation inadequate." *Victim Rights Law Center v. Rosenfelt*, 988 F.3d 556, 562 (1st Cir. 2021) (affirming denial of intervention "for the purpose of presenting [certain] constitutional arguments in addition to the government's non-constitutional defenses.").

Finally, Movants contend that the County's agreement to forgo discovery in this case shows that its interests are "distinct from the underlying substantive interests of the Movants protected by the Religious Aid Clause of the New Jersey Constitution, as well as the Establishment Clause to the United States Constitution." Br. 5. Again, Movants fail to identify what interests of theirs could be protected only with the benefit of discovery in this case. And in any event, a "simple difference as to litigation tactics"—such as the "cho[ice] not to pursue discovery of certain information"—is "insufficient to satisfy the inadequate representation requirement." *Pierson v. United States*, 71 F.R.D. 75, 80 (D. Del. 1976). Movants thus have not shown that their

8

interests and the County's interests are "sufficiently different" to support an inference of inadequate representation. *Hoots*, 672 F.2d at 1135; *see also NCAA v. Corbett*, 296 F.R.D. 342, 350 (M.D. Pa. 2013) ("Senator Corman neither contends that the named Defendants will not adequately advance their arguments on these grounds nor that he, if permitted to intervene, would raise different arguments.").

Second, Movants have established neither lack of adversity between the existing parties nor that the County has somehow failed to defend the litigation diligently. Movants gesture at these factors in criticizing "the stipulation of the parties to dispense with an answer and proceed directly to consideration of dispositive motions." Br. 5. Setting aside that such stipulations are commonplace, the parties' stipulation reflects the unremarkable fact that this case, like *FFRF*, presents "a pure question of law," 181 A.3d at 997: whether the County's religious exclusion policy violates the First Amendment to the federal Constitution. Indeed, that is why Movants themselves in *FFRF* proceeded directly from the pleading stage to summary judgment on "a Joint Statement of Stipulated Facts." Br. in Opp. at 8, Nos. 18-364, 18-365 (U.S. Nov. 26, 2018). What was fair for Movants in that case is fair

9

for the parties in this case. There is thus no basis for Movants' suggestion that the County is somehow not adverse to Plaintiffs or has been less than diligent in defending this litigation by virtue of its agreements to proceed to dispositive motions based on stipulated facts.

For these reasons, Movants are not entitled to intervene as of right.

## B.     Permissive Intervention Is Not Appropriate.

Permissive intervention is also inappropriate. Rule 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).[2] While "a denial of intervention as of right does not automatically mandate a denial of permissive intervention," *Hoots*, 672 F.2d at 1136, it may significantly inform the permissive-intervention analysis. Specifically, "[w]here … the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's

---

[2] Like Rule 24(a)(1), Rule 24(b)(1)(A) authorizes permissive intervention for anyone who "is given a conditional right to intervene by a federal statute." Fed. R. Civ. P. 24(b)(1)(A). Movants do not invoke this provision or claim to hold any such right.

10

contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'" *Id.*; *see also NCAA*, 296 F.R.D. at 350 (Where a proposed intervenor's "participation in [the] litigation will not add anything of value to the proceedings and would only serve to cause undue delay, permissive intervention is not warranted."). For essentially the reasons explained above, Movants do not meet that standard, particularly where, as here, its interest can be fully protected in an amicus brief.

To be clear, Plaintiffs would not oppose a request that the Court "accord[] [Movants] the status of *amici curiae.*" *South Carolina v. N. Carolina*, 558 U.S. 256, 288 (2010) (Roberts, C.J., concurring in part and dissenting in part). But, "[w]here he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *Id.* (quoting *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (per curiam)); *e.g., Rosenfelt*, 988 F.3d at 564 (noting, in denying permissive intervention, that "the amicus procedure provides sufficient opportunity for [proposed intervenors] to present their view."). To the extent Movants believe they hold "a wealth of specialized experience" that would benefit

11

the Court, Br. 6, therefore, their participation in this litigation (if any) should be through an *amicus* brief, not intervention.

### C. In the Alternative, the Court Should Limit Discovery and Maintain the Case Schedule.

If the Court nonetheless permits intervention, Plaintiffs respectfully request that the Court limit any discovery and attendant disruption to the case schedule.

First, the claims in this case present pure questions of law that require no discovery. As the existing parties agree, there are no relevant disputed facts. *See* Dkt. 18-1. Indeed, the County's program rules are public, as are the grants that the County has issued. Accordingly, in the event the Court considers intervention appropriate, the most efficient path forward for both the Court and the parties would be to reinstate the briefing schedule and permit Movants to file an opposition brief (and any cross-motion for summary judgment) when the County's own opposition brief and cross-motion for summary judgment are due.

Even if the Court sees fit to permit discovery, that discovery should be limited in time and form. As to timing, Movants themselves argue that only "a *brief* period" of discovery would be appropriate. Br. 7 (emphasis added). As to form, any discovery should be substantively limited to the

12

Movants' asserted need "to uncover how the Defendants [sic] actions have accorded with the New Jersey Religious Aid Clause and the prior order of the Supreme Court of New Jersey." *Id.* Movants do not claim to need discovery from Plaintiffs, nor would any such discovery be appropriate given that this case concerns only Plaintiffs' eligibility for grant funding—which the County determines, not Plaintiffs (nor Movants). In addition, Movants do not need discovery dating back beyond the *FFRF* decision, given that the disputed policy in this case was enacted after that decision was issued. *See* Dkt. 18-1 at ¶¶ 38-40. Plaintiffs thus respectfully request that the Court limit discovery in these ways in the event it deems intervention and any attendant discovery to be appropriate.

Finally, and in all events, Plaintiffs respectfully request that the Court ensure that they have an opportunity to respond to any dispositive motion or opposition that Movants may file. If Movants were required to file their papers when the County's own papers are due, Plaintiffs could adequately respond in their reply in support of their motion for summary judgment as well as in their oppositions to the County's and Movant's cross-motions for summary judgment.

13

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that this Court deny Movants' request for intervention without prejudice to Movants' ability to file an *amicus* brief. In the alternative, Plaintiffs respectfully request that the Court limit any discovery and disruption to the case schedule as described above in Section C.

Dated: August 22, 2023	Respectfully submitted,


/s Mark Roselli
Mark Roselli
Roselli Griegel Lozier & Lazarro, PC
1337 Highway 33
Hamilton, New Jersey 08690
Telephone: (609) 586-2257
mroselli@roselligriegel.com

Noel J. Francisco
(*pro hac vice*)
Megan Lacy Owen
(*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
njfrancisco@jonesday.com
mlacyowen@jonesday.com

J. Benjamin Aguiñaga
(*pro hac vice*)
JONES DAY
2727 North Harwood Street Suite 500
Dallas, Texas 75201
Telephone: (214) 220-3939
jbaguinaga@jonesday.com

Jeremy Dys
(*pro hac vice*)

>Ryan Gardner (*pro hac vice*)
>First Liberty Institute
>2001 W. Plano Pkwy, Suite 1600
>Plano, TX 75075
>Telephone: (972) 941-4444
>jdys@firstliberty.org
>rgardner@firstliberty.org
>
>Eric C. Rassbach
>(*pro hac vice*)
>The Hugh and Hazel Darling
>Foundation Religious Liberty Clinic
>Pepperdine University Caruso
>School of Law
>24225 Pacific Coast Highway
>Malibu, CA 90263
>Telephone: (310) 506-4611
>eric.rassbach@pepperdine.edu
>
>*Attorneys for Plaintiffs*
>*The Mendham Methodist Church*
>*and*
>*The Zion Lutheran Church Long Valley*

16

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2023, a copy of the foregoing was served on all participants in this case via the Court's CM/ECF system.

<em>s/ Mark Roselli</em>