THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEW JERSEY

THE MENDHAM METHODIST
CHURCH; and THE ZION LUTHERAN
CHURCH LONG VALLEY,

        Plaintiffs,

v.

MORRIS COUNTY, NEW JERSEY;
MORRIS COUNTY BOARD OF COUNTY
COMMISSIONERS; MORRIS COUNTY
HISTORIC PRESERVATION TRUST
FUND REVIEW BOARD; and
JOHN KRICKUS, in his official capacity
as Commissioner Director for the Morris
County Board of County Commissioners,

        Defendants.

Case No. 2:23-cv-02347

**MOVANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO INTERVENE**

**I.    INTRODUCTION.**

The Plaintiffs claim in their First Amended Complaint that they are entitled to public financing for places of worship. They claim to have an important constitutional right to public funding. But the Movants also have an important, competing constitutional right not to fund religion. In fact, their interests have been vindicated by judicial decision, affirmed by the New Jersey Supreme Court. This action expressly seeks to overrule the decision of the New Jersey Supreme Court. In these circumstances, the Movants not only have an interest to protect in this action, but they are the parties most logically positioned and motivated to defend.

The Plaintiffs argue against the Movants' interests largely by reference to the merits standard applicable to determining whether a compelling state interest exists. The standard for

intervention, however, is not the merits standard applicable to the Religion Clauses of the United States Constitution. The intervention standard is one of practicality, applied to assure that the relevant issues are fully and fairly presented to the court.

In this case, the adequacy of representation by the Defendants is legitimately in question. The Defendants previously espoused the same arguments as these Plaintiffs in the prior litigation. In the present case, moreover, the Defendants have not indicated that their position has changed, nor indicated what their position is, based on the Parties' stipulation to forego any answer and all discovery. The decision to engage in no discovery itself calls into question the adequacy of the Defendants' representation of the Movants' interests precisely because the application of the law in a given case is dependent upon the facts, rather than determinations of law in a vacuum.

The Movants satisfy the applicable standards for intervention as a matter of right and/or permissive intervention. The Movants, therefore, should be entitled to fully litigate the issues involved, including the right to conduct reasonable and relevant discovery as permitted by the Federal Rules of Civil Procedure.

**II.     THE MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.**

   A.   <u>The Movants Have an Interest in This Matter That Supports Intervention as a Matter of Right</u>.

The Plaintiffs' First Amended Complaint expressly targets the Movants' prior favorable judgment, upheld by the New Jersey Supreme Court. The Plaintiffs do not dispute that the present action seeks to effectively overrule the decision of the New Jersey Supreme Court holding that the No Aid Clause of the New Jersey Constitution bars the use of taxpayer funds to repair and restore churches and the Morris County grant program runs afoul of that longstanding provision. (Doc. 11, First Amended Complaint, ¶4, citing *Freedom From Religion Foundation v. Morris County Board of Chosen Freeholders,* 181 A.3d 992, 994 (N.J. 2018).)

Plaintiffs allege that the New Jersey Supreme Court, in its prior decision in favor of the Movants herein, misread United States Supreme Court precedent and rendered a wrong decision. (First Amended Complaint at ¶10.) The New Jersey Supreme Court's decision, however, addressed the same issues raised in this subsequent case, including the Court's conclusion that the No Aid Clause is consistent with the First Amendment's Free Exercise Clause. (First Amended Complaint at ¶80, citing *Freedom From Religion Foundation* 181 A.3d at 1012.) In fact, moreover, the Defendants herein sought certiorari review by the United States Supreme Court in the prior action, which Petition the Supreme Court denied. (First Amended Complaint at ¶81.)

The Plaintiffs, however, renew challenges to the No Aid Clause in the present action, alleging that the New Jersey Supreme Court's decision and its reasoning has been repudiated by the United States Supreme Court. (First Amended Complaint at ¶82.) The Plaintiffs specifically allege, for example, that the New Jersey Supreme Court incorrectly determined that the State had a sufficient interest in not using public funds to build or repair churches. (First Amended Complaint at ¶¶127-128.) In the end, therefore, Plaintiffs' Prayer for Relief seeks a declaration that the No Aid Clause of the New Jersey Constitution violates the Free Exercise Clause of the First Amendment insofar as it justifies exclusion from religious organizations from eligibility for grant money to repair churches. (First Amended Complaint at p. 48, Prayer for Relief ¶1.)

Despite the express challenge in their First Amended Complaint to the prior decision of the New Jersey Supreme Court, the Plaintiffs argue that the Movants are not entitled to intervention as a matter of right because they lack sufficient interest in the outcome of this subsequent case. The Plaintiffs contend that the Movants' right and ability to protect their favorable judgment in the prior litigation is of no significance, and that the Plaintiffs' requested

disposition in this action, intended to overrule the New Jersey Supreme Court's decision, is irrelevant under Fed. R. Civ. P. 24(a)(2).

The Plaintiffs ignore that intervention is a matter of practicality focused on the reality of what is really happening. As this court recognized in *Clean Earth, Inc. v. Endurance American Insurance,* 2016 WL 5422063*3 (D.N.J. 2016), there is no "precise and authoritative definition of the interest that satisfies Rule 24(a)(2)," and no pattern exists "that will easily support or defeat intervention in all circumstances." *Id.* quoting *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 970 (3rd Cir. 1998). "Instead, in determining motions to intervene 'courts should adhere to the elasticity that Rule 24 contemplates' and 'may examine pragmatic considerations.'" *Clean Earth,* 2016 WL 5422063 at ¶3 quoting *Kleissler* 157 F.3d at 970. That said, due regard for the efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. *Kleissler,* 157 F.3d at 972.

Here, the Movants do have a meaningful interest in the outcome of this litigation so as to support intervention as a matter of right. The Plaintiffs' First Amended Complaint is expressly intended to supplant and take precedence over the favorable judgment obtained as a result of the prior decision that the Movants received in the prior New Jersey litigation. This action is expressly intended to adversely affect the Movants in a substantially concrete fashion by the relief sought herein. This is the result intended by the Plaintiffs, and it will directly impair the Movants' ability to protect their rights under the New Jersey Constitution, as ultimately recognized by the New Jersey Supreme Court.

The Plaintiffs argue incorrectly that the Movants do not have an interest in the prior judgment they obtained. The Plaintiffs contend that the prior judgment was not personal to the

4

Movants, but they ignore that the Movants were the Plaintiffs in the prior litigation, with standing to assert their own interest that public funds not be used in violation of the No Aid Clause of the New Jersey Constitution. Here, the Movant Steketee is himself a taxpayer whose taxes would be used to fund churches, which gives him a personal interest in seeing that the No Aid Clause of the New Jersey Constitution is enforced. The Movant Freedom From Religion Foundation also has representative standing for its members who pay taxes in Morris County.

The Plaintiffs misapprehend the interest necessary for intervention by their reference to the interest standard applicable to merit determinations under the Establishment Clause. That is not the standard for intervention. The Plaintiffs argue that an "antiestablishment interest" does not support exclusion from a generally available public benefit program and, therefore, "intervenors may not secure intervention as of right based on the same illegitimate interest." (Doc. 21, Plaintiffs' Opposition Brief at 5-6, quoting *Carson v. Makin*, 142 S.Ct. 1987, 1998 (2022).) The compelling state interest issue in *Carson*, however, is a merits standard, which is not the standard for intervention. By conflating merits standards with intervention standards, the Plaintiffs essentially assume their conclusion on the merits as a basis to deny intervention to challenge on the merits.

"As a practical matter," in considering the "elasticity that Rule 24 contemplates," the Movants have an obvious interest in the outcome of this litigation for purposes of intervention as a matter of right. The purpose of the present lawsuit is to effectively overrule the New Jersey Supreme Court decision in favor of the Movants, whose rights under the New jersey Constitution will be abrogated. That presents a real threat to the substantial and personal interests of the Movants, asserted, and vindicated in the prior litigation.

Finally, the Plaintiffs do not dispute that the enforceability of the New Jersey Supreme Court decision potentially will be impaired or affected by the disposition of the present action. This case presents an unmistakable threat to the Movants' interests, focusing on the "practical consequences of the litigation." *Commonwealth of Pennsylvania v. President of United States,* 888 F.3d 52, 57-58 (3rd Cir. 2018). In considering the Movants' Motion to Intervene, therefore, this court "may consider any significant legal effect on the applicant's interest, including a decision's *stare decisis* effect or a proposed remedy's impact on the applicant for intervention." *Id.* That applicable standard is met in this case.

B. <u>The Interests of the Movants and the Defendants in the Present Case Are Divergent for Purposes of Intervention.</u>

The burden to show that the Movants' interests are not adequately represented by the existing parties in this litigation is minimal. *See Trvovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972). This burden only requires a showing that the representation of the Movants' interest "may be inadequate." *Commonwealth of Pennsylvania,* 888 F.3d at 57-58, citing *Kleissler,* 157 F.3d at 969.

The Plaintiffs do not dispute that the Defendants in the present action actually argued in the prior litigation against the Movants herein. The Plaintiffs do not dispute this divergence of interest, while arguing that the Movants should now rely upon the Defendants herein to protect their interests under the No Aid Clause of the New Jersey Constitution. Finally, the Plaintiffs do not even contend that the Defendants now hold the same understanding of the No Aid Clause as do the Movants.

The Plaintiffs disingenuously argue that the Defendants' silence should be construed as indicative of adequate representation. The Plaintiffs note that "neither Movants nor Plaintiffs know what arguments the County will make in response to Plaintiffs' free exercise challenge to

6

its policy, and the County did not identify such arguments in its letter taking no position on intervention." (Doc. 21, Plaintiffs Opposition Brief at 7.) The Parties' agreement to dispense with an answer from Defendants, and to forego all discovery, however, is not reassuring of adequate representation, but rather suggests in reality that the Defendants' representation of Movants' interests "may be" inadequate. Intervention after a decision on summary judgment inevitably would likely be untimely. Thus, "wait and see" is not a viable option given the circumstances that the Parties have attempted to construct.

The Defendants' agreement to forego all discovery is itself indicative of inadequate representation. In the first place, the Movants disagree that dispensing with an answer and discovery, while proceeding immediately to summary judgment, is a ubiquitous procedure. The Plaintiffs state that "such stipulations are commonplace", but the source and validity of that assertion as a generalization is unknown and questionable. In any event, the facts of the case are significant, as Justice Kavanaugh recognized in his concurrence of the denial of certiorari in the prior litigation. Justice Kavanaugh stated that "at this point and in this case, it is appropriate to deny certiorari, [because] the factual details of the Morris County program are not entirely clear. In particular, it is not evident precisely what kind of buildings can be funded under the Morris County program. That factual uncertainty about the scope of the program could hamper our analysis of petitioners' religious discrimination claim." *Morris County Board of Chosen Freeholders, et al., vs. Freedom From Religion Foundation, et al.*, 139 S. Ct. 909, 911(2019) (Kavanaugh, J., concurring). As Justice Kavanaugh recognized, and as do the Movants, a fully developed factual record is necessary and appropriate to the consideration of the important constitutional issues implicated by this action. It would be a waste of judicial resources to move

forward with litigation of this case on a thinner record than was present even in the prior litigation.

The Plaintiffs, therefore, argue incorrectly that this case presents only a question of law without regard to the facts. Potential subjects of relevant discovery include: (1) Plaintiffs' willingness to adhere to all requirements of the Morris County program in order to receive funding; (2) the precise intended uses of the funding sought by the Plaintiffs, including how closely those intended uses are connected to the churches' worship space or religious imagery; (3) under what circumstances the Plaintiffs have received funding under the County's prior grant program and how those funds were used; and (4) how the County's revised program operates, including what aspects of the approval process are discretionary and what safeguards are in place to ensure that the County is not violating the constitutional rights of its taxpayers, program applicants, and potential applicants. Such areas of discovery are necessary in order to apply the applicable law to the specific facts of the case. The Defendants' mere acceptance of the facts as presented by the Plaintiffs evidences a lack of intent to establish an adequate record for consideration of the important issues raised in this case.

Additionally, as Justice Kavanaugh noted in his concurrence denying certiorari in the prior case, the facts are important here in part because "there is not yet a robust post-*Trinity Lutheran* body of case law in the lower courts on the question whether governments may exclude religious organizations from general historic preservation grants programs." *Id.* In order to answer that question, the *history* of such practices will be invaluable in evaluating the competing protections between the New Jersey's No Aid Clause and the federal Free Exercise Clause. The Supreme Court recently noted the importance of evaluating a similar claim "by 'reference to historical practices and understandings'" in *Kennedy v. Bremerton School District*, where a

football coach brought a free exercise challenge to end a government policy premised on an Establishment Clause interest. *See* 142 S.Ct. 2407, 2428 (2022); *see also Locke v. Davey*, 540 U.S. 712, 725 (2004) ("In short, we find neither in the history or text of Article I, § 11, of the Washington Constitution, nor in the operation of the Promise Scholarship Program, anything that suggests animus toward religion. Given the historic and substantial state interest at issue, we therefore cannot conclude that the denial of funding for vocational religious instruction alone is inherently constitutionally suspect."). Given the importance of understanding historical practices when evaluating this type of constitutional claim, the Movants anticipate providing the Court with expert testimony regarding the historical context during which New Jersey adopted its No Aid Clause, and how, at that time, a prohibition on the government funding churches was viewed to interact with free exercise protections.

The Movants, in short, do satisfy the requirements for intervention as a matter of right under Rule 24(a)(2). Their interests are at stake, and the full-throated adequacy of representation of their interests by the Defendants is in real question.

## III. THE MOVANTS ALSO ARE ENTITLED TO PERMISSIVE INTERVENTION.

The Plaintiffs also argue unpersuasively that permissive intervention is inappropriate pursuant to FRCP 24(b)(1)(B). That Rule authorizes intervention to anyone who has a claim or defense that shares common questions of law or fact with the main action. The Plaintiffs do not contend that the Movants fail to satisfy this standard as articulated. Permissive intervention, therefore, is appropriate within the court's broad discretion. *See Conforti v. Hanlon*, 2023 WL 2744020*4 (D.N.J. 2023).

The Plaintiffs primarily argue that the Movants' interests are adequately represented by the Defendants. As discussed above, however, the Defendants' representation of the Movants'

9

interests is not a glove fit. In fact, the Parties' have obscured the Defendants' position to the extent that the Plaintiffs deny any knowledge of the defense position. Confounding the matter further, the Parties have agreed to forego all discovery and to proceed on stipulated facts. As Justice Kavanaugh recognized, however, in his concurrence to denial of certiorari in the prior litigation involving these same issues, factual nuance needs to be developed in order to competently consider the constitutional issues raised. As described above, relevant issues of factual inquiry appropriate for discovery permeate throughout this matter, and additionally, expert analysis of the relevant history surrounding New Jersey's No Aid Clause will serve the Court in balancing the relevant constitutional protections. Thus, to the extent that the Plaintiffs contend that a broad abstract ruling is appropriate, without regard to the facts, they misapprehend the reality. And the County's seeming agreement with Plaintiffs' contention—as evidenced by its agreement to forego discovery—confirms that the County will not adequately protect the Movants' interests.

  Participation in this matter with an amicus brief is not a comparable substitute for intervention. Without intervention, the Movants cannot conduct necessary discovery. In fact, they cannot even participate in determining the stipulated facts that the Parties contemplate.

  The Plaintiffs implicitly recognize that intervention allows the Movants a more meaningful role than does the filing of an amicus brief. If no difference inhered between intervention and amicus participation, then the Plaintiffs' objection to intervention would be pointless. In fact, however, the Plaintiffs do recognize that intervention may result in a more thorough vetting of the facts necessary to rule upon the legal issues involved in this case. Hence, the Plaintiffs' objection to intervention.

  Participation by intervention, in short, will aid the Court in its deliberations in this matter.

The Movants will advance a thoughtful consideration of the facts and the law that is not redundant.

### IV. DISCOVERY RELEVANT TO PLAINTIFFS' CLAIMS SHOULD NOT BE PRECLUDED.

The Movants are entitled to litigate fully on the merits if intervention is granted. As described above, and as Justice Kavanaugh previously has recognized, issues of fact are important to the applications of law to the Defendants' grant program. The Plaintiffs' argument that this case involves only questions of law ignores the reality that the law must be applied to the relevant facts. The Movants identified some preliminary areas of discovery, described above, and should be permitted to pursue those, alongside any other relevant inquiries, governed by the rules of relevancy generally applicable to discovery. Notably, many areas of relevant discovery, including some identified above, will involve participation by the Plaintiffs and will involve some matters that took place prior to the resolution of the prior lawsuit. Thus, Movants also disagree with Plaintiffs' contentions (*see* Dkt. 21 at 12–13) that if the Court allows for discovery that it would be unnecessary to include the Plaintiffs in that process and unnecessary to allow discovery on matters occurring prior to the resolution of the *FFRF* decision.

The Plaintiffs' proposed limitations on discovery would defeat the purpose of intervention to assure adequate representation of the Movants' interests. The Plaintiffs imply that factual nuances will not affect the substance or scope of any ruling by the Court. The Plaintiffs imply that public funding for places of worship is a simple "yes" or "no" determination. In reality, the proper balancing of competing interests may result in more complexity than the Plaintiffs envision and which they hope will not be the case. In any event, the Court should deny the Plaintiffs' requested limitations on discovery and reestablish a schedule that will allow for full development of the factual record, through discovery and the use of expert historical

analysis.

## V.   CONCLUSION.

For all of the above reasons, the Court should grant Movants' Motion for Intervention. The Court also should deny the Plaintiffs' request to preclude or narrowly limit discovery.

Dated this 29th day of August, 2023.

*/s/ Paul S. Grosswald*
Paul S. Grosswald
98 W. End Avenue
Summit, New Jersey 07901-1222
Telephone:   917-753-7007
Email: pgrosswald@hotmail.com

Richard L. Bolton
Boardman Clark LLP
Wisconsin State Bar No.   1012552
1 South Pinckney Street, Suite 410
P. O. Box 927
Madison, WI 53701-0927
Telephone:   608-257-9521
Facsimile:   608- 283-1709
ATTORNEYS FOR INTERVENORS
*Pro hac vice motion forthcoming*

Samuel T. Grover
Wisconsin State Bar No. 1096047
Email:   sgrover@ffrf.org
FREEDOM FROM RELIGION
FOUNDATION, INC.
P. O. Box 750
Madison, Wisconsin   53701
Telephone:   608-256-8900
Telecopier:   608-204-0422
ATTORNEYS FOR INTERVENORS
*Pro hac vice motion pending*

*Attorneys for Intervenors*

## **CERTIFICATE OF SERVICE**

      I certify that on August 29, 2023, a true and correct copy of the foregoing was filed with the Clerk of Court electronically using the Court's CM/ECF system. I certify that all participants in this case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

                                                    */s/ Paul S. Grosswald*
                                                    Paul S. Grosswald