# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

THE MENDHAM METHODIST CHURCH; and
THE ZION LUTHERAN CHURCH LONG
VALLEY,

  Plaintiffs,

  v.

MORRIS COUNTY, NEW JERSEY; MORRIS
COUNTY BOARD OF COUNTY
COMMISSIONERS; MORRIS COUNTY
HISTORIC PRESERVATION TRUST FUND
REVIEW BOARD; and JOHN KRICKUS, in his
official capacity as Commissioner Director for the
Morris County Board of County Commissioners,

  Defendants.

Hon. Evelyn Padin, U.S.D.J.
Hon. Jessica S. Allen, U.S.M.J.

Docket No. 2:23-cv-2347-EP-JSA

---

## BRIEF IN SUPPORT OF PROPOSED DEFENDANT-INTERVENOR NEW JERSEY ATTORNEY GENERAL'S MOTION TO INTERVENE

---

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, New Jersey 08625

Jeremy M. Feigenbaum (NJ Bar No. 117762014)
 *Solicitor General*
Michael L. Zuckerman (NJ Bar No. 427282022)
 *Deputy Solicitor General*
Nathaniel I. Levy (NJ Bar No. 386322021)
 *Deputy Attorney General*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................2

ARGUMENT ...........................................................................................4

   I.    THE ATTORNEY GENERAL MAY INTERVENE AS OF RIGHT. ........4

      A.   This Motion Is Timely. ................................................................5

      B.   The Attorney General Has Substantial Interests In This Case..................6

      C.   The Attorney General's Interests Are Not Adequately Represented And May Be Otherwise Impaired. ....................................................................8

   II.   ALTERNATIVELY, THIS COURT SHOULD GRANT THE ATTORNEY GENERAL PERMISSIVE INTERVENTION....................14

CONCLUSION ...................................................................................16

CERTIFICATE OF SERVICE ...............................................................16

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                  <u>Page(s)</u>

*ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*,
   309 F.R.D. 191 (D.N.J. 2015)................................................................5

*Alexander v. New Jersey Power & Light Co.*,
   122 A.2d 339 (N.J. 1956)...................................................................8

*Arizonans for Off. Eng. v. Arizona*,
   520 U.S. 43 (1997)..........................................................................13

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania*,
   701 F.3d 938 (3d Cir. 2012)...........................................................5, 6

*Berger v. N. Carolina State Conf. of the NAACP*,
   142 S. Ct. 2191 (2022)..................................................................7, 9

*Boutros v. Restrepo*,
   321 F.R.D. 103 (D.N.J. 2017)........................................................5, 6

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
   142 S. Ct. 1002 (2022) ......................................................... 6, 7, 8, 15

*Chiropractic Am. v. Lavecchia*,
   180 F.3d 99 (3d Cir. 1999)..............................................................12

*Commonwealth of Pennsylvania v. President United States of Am.*,
   888 F.3d 52 (3d Cir. 2018)..............................................................9

*Freedom From Religion Found. v. Morris Cty. Bd. of Chosen Freeholders*,
   181 A.3d 992 (N.J. 2018)........................................................ passim

*Harrison v. Nat'l Ass'n for the Advancement of Colored People*,
   360 U.S. 167 (1959)......................................................................13

*In re Fine Paper Antitrust Litigation*,
   695 F.2d 494 (3d Cir. 1982)............................................................5

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3d Cir. 1998)......................................................................10

*Lehman Bros. v. Schein*,
  416 U.S. 386 (1974).................................................................................13

*Lockhart v. Fretwell*,
  506 U.S. 364 (1993).................................................................................12

*Maryland v. King*,
  567 U.S. 1301 (2012)................................................................................7

*McKay v. Heyison*,
  614 F.2d 899 (3d Cir. 1980)......................................................................15

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995)......................................................................5, 6

*N.J. State Bd. of Higher Educ. v. Bd. of Dirs. of Shelton Coll.*,
  448 A.2d 988 (N.J. 1982).........................................................................13

*Peruta v. Cnty. of San Diego*,
  824 F.3d 919 (9th Cir. 2016) ....................................................................11

*Phila. City Council v. Schweiker*,
  40 F. App'x 672 (3d Cir. 2002) .................................................................12

*Planned Parenthood of Central N.J. v. Farmer*,
  220 F.3d 127 (3d Cir. 2000)......................................................................12

*Railroad Commission of Texas v. Pullman Co.*,
  312 U.S. 496 (1941).................................................................................12

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972)...................................................................................9

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  582 U.S. 449 (2017)...................................................................................3

*U.S. ex rel. Lawrence v. Woods*,
  432 F.2d 1072 (7th Cir. 1970) ...............................................................12

*United States v. Alcan Aluminum, Inc.*,
  25 F.3d 1174 (3d Cir. 1994)...................................................................5

*United States v. Territory of Virgin Islands*,
  748 F.3d 514 (3d Cir. 2014)............................................................. 9, 14

*Van Ness v. Borough of Deal*,
  352 A.2d 599 (N.J. Super. Ct. Ch. Div. 1975)........................................8

*Wallach v. Eaton Corp.*,
  837 F.3d 356 (3d Cir. 2016)...................................................................4

## <u>Constitutional Provisions</u>

N.J. Const. art. I, ¶ 3. .................................................................................2

## <u>Statutes</u>

N.J. Stat. Ann. § 52:17A-4............................................................................8

28 U.S.C. § 2403 ............................................................................... 7, 15

## <u>Rules</u>

Fed. R. Civ. P. 5.1 .....................................................................................7

Fed. R. Civ. P. 24 .................................................................... 1, 4, 14, 15

N.J. Ct. Rule 2:12A-1.................................................................................13

## <u>Other Authorities</u>

Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1909 (3d ed.) ..................9

## PRELIMINARY STATEMENT

Five years ago, in a substantially similar dispute involving many of the same entities, the New Jersey Supreme Court construed Article I, Paragraph 3, of the New Jersey Constitution; announced state and local public entities' obligations under that provision; and found that state constitutional provision and the obligations it created to be consistent with the federal Free Exercise Clause. *See Freedom From Religion Found. v. Morris Cty. Bd. of Chosen Freeholders*, 181 A.3d 992 (N.J. 2018) (*FFRF*). Today, this lawsuit asks this federal Court to declare the opposite: that what the New Jersey Supreme Court *prohibited* for New Jersey public entities is actually *required*. Were Plaintiffs to prevail in this effectively collateral attack, their lawsuit would thus not only declare a state constitutional provision unconstitutional, but put New Jersey entities to an impossible choice: violate a decision of this Court interpreting the Free Exercise Clause, or violate the New Jersey Supreme Court's decision interpreting both the New Jersey Constitution *and* the Free Exercise Clause. That is a needless collision, and this Court should decline the invitation down this path.

The New Jersey Attorney General therefore moves to intervene in this matter. The Attorney General's intervention is warranted, whether as a matter of right under Federal Rule of Civil Procedure 24(a), or with this Court's permission under Rule 24(b). For one, the Attorney General has an undeniable interest in the validity of any New Jersey constitutional provision, as well as in the sovereignty and authority of

1

its state courts. For another, granting the Attorney General intervention will not prejudice any parties or burden the Court, because this case is still in its earliest stages. And most importantly, the Attorney General has much to add here. The Attorney General, of course, can defend the validity of his State's constitutional provision on the merits—just as he defends state laws and agency actions from federal constitutional challenge. But even more, the Attorney General's intervention would empower him to present an argument (not yet raised by any parties) regarding abstention—that is, to provide a path by which this Court could and should allow state courts the opportunity to address preliminary questions that would avoid the federal-state conflict Plaintiffs explicitly invite.

This Court should grant the Attorney General's motion to intervene.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Since 1776, New Jersey's constitution has included a Religious Aid Clause. Today, under New Jersey's 1947 Constitution, that Clause reads: "No person shall be ... obliged to pay tithes, taxes, or other rates for building or repairing any church or churches, place or places of worship … contrary to what he believes to be right or has deliberately and voluntarily engaged to perform." N.J. Const. art. I, ¶ 3.

The Morris County Historic Preservation Trust Fund Review Board (Trust Fund) administers a taxpayer-funded historic preservation grant program. In 2015, the Freedom From Religion Foundation and one of its Morris County-based

members (collectively, the Foundation) sued the Trust Fund and various Morris County officers, as well as a number of churches that had received grant funding from the Trust, claiming those grants violated the Religious Aid Clause. The New Jersey Supreme Court agreed, holding that "the use of public funds to pay for ... repairs" to "active houses of worship" violated the Clause. *FFRF*, 181 A.3d at 1004-1005. That court further held that the Religious Aid Clause was not unconstitutional under the federal Free Exercise Clause, as most recently interpreted (at that time) by the U.S. Supreme Court in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017). *See FFRF*, 181 A.3d at 1012. In other words, based on its review of both the New Jersey Constitution and the federal Free Exercise Clause, the New Jersey Supreme Court prohibited these specific uses of public funds.

Plaintiffs here—two churches that wish to benefit from Morris County's program but were not parties to the prior suit—now challenge the constitutionality of the Religious Aid Clause in light of *FFRF*. This past April, they sued the Trust Fund, Morris County, and various Morris County officers (collectively, the County), alleging principally that by denying them historic-preservation funding—that is, by complying with the New Jersey Constitution as interpreted in *FFRF*—the County is violating the Free Exercise Clause. Compl. ¶¶ 91-131. On July 26, before either an Answer or Motion to Dismiss was filed, the parties jointly moved to proceed directly to summary judgment, stipulating that the case presents purely legal questions that

3

do not require discovery. ECF 13. The Court granted that joint motion and set a briefing schedule, ECF 15, and Plaintiffs accordingly filed their motion for summary judgment on August 11, ECF 18, accompanied by a joint statement of material facts. The parties stipulated that, but for *FFRF*'s interpretation of New Jersey's Religious Aid Clause, Plaintiffs would be eligible to receive funding through Morris County's program. ECF 18-2 at 8-10.

But the day before, on August 10, the Foundation moved to intervene. On August 15, this Court administratively terminated Plaintiffs' summary-judgment motion and stayed the parties' summary-judgment briefing, pending the outcome of the intervention motion. ECF 19. This case thus remains in its infancy: no responsive pleadings have been filed; discovery has not commenced; and dispositive-motions briefing, having briefly begun, is not currently underway.

## **ARGUMENT**

### I. **THE ATTORNEY GENERAL MAY INTERVENE AS OF RIGHT.**

The Third Circuit "requires a district court to consider four factors when ruling on a Rule 24(a)(2) motion: whether '(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.'" *Wallach v. Eaton Corp.*, 837 F.3d 356, 372 n.18 (3d Cir. 2016) (citation omitted).

"Courts ... liberally construe Rule 24(a) in favor of intervention." *ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*, 309 F.R.D. 191, 192 (D.N.J. 2015); *see United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1180 (3d Cir. 1994). Those factors fully support granting the Attorney General's motion to intervene.

    A.   <u>This Motion Is Timely</u>.

Given that this litigation remains in its nascent stages, there is no doubt that the Attorney General's motion is timely under Rule 24(a).

Timeliness under Rule 24(a) is not a strict standard. The timeliness of a motion to intervene is "determined from all the circumstances," *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995), including "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for [any] delay," *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 949 (3d Cir. 2012). Boiled down, "the critical inquiry is: what proceeding of substance on the merits have occurred?" *Boutros v. Restrepo*, 321 F.R.D. 103, 106 (D.N.J. 2017) (quoting *In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3d Cir. 1982)). And "because the would-be intervenor ... may be seriously harmed if not allowed to intervene," "there is a general reluctance" to deny "interven[tion] as of right on untimeliness grounds." *Benjamin*, 701 F.3d at 949.

Those guidelines clearly cut in favor of intervention here, given how little the merits have thus far advanced. The County has neither responded to the complaint

nor filed a dispositive motion; dispositive-motions briefing is stayed; the overall suit is less than six-months old; and the County's decision to forgo a motion to dismiss or any discovery is barely two months old. *See supra* 4. Under the circumstances, the Attorney General's intervention motion is not delayed, and granting it could not prejudice the parties. *See, e.g.*, *Boutros*, 321 F.R.D. at 106 (allowing intervention more than thirteen months after suit was filed and nine months after removal to federal court, where dispositive-motion briefing had not been completed); *Mountain Top Condo Ass'n*, 72 F.3d at 370 (no prejudice where "no depositions had been taken, dispositive motions filed, or decrees entered during the four year[s]" since commencement of litigation). By contrast, as discussed below, the Attorney General would be harmed by being unable to intervene. *See Benjamin*, 701 F.3d at 949.

B.     The Attorney General Has Substantial Interests In This Case.

The Attorney General's interests easily satisfy Rule 24(a)(2). The "polestar for intervention is whether the proposed intervenor's interest is direct or remote," or "legally cognizable" and "tangibl[y] threaten[ed]." *Benjamin*, 701 F.3d at 951. An Attorney General seeking to defend the constitutionality of state law—and more, a provision of the state constitution—unquestionably is a cognizable interest.

Federal precedent makes that clear. In *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002 (2022), for instance, the Supreme Court held that the interest of the Kentucky Attorney General—intervening on behalf of Kentucky to

6

seek further review of a state law that had been ruled unconstitutional by the Sixth Circuit—was more than sufficient to justify intervention. After all, the State's legal interest in defending its own law "sounds in deeper, constitutional considerations," the Court explained, because a State has the "sovereign ... power to enact and enforce any laws that do not conflict with federal law," and "clearly has a legitimate interest in the continued enforceability of its own [law]." *Id.* at 1010-11; *see also Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2201 (2022) (same). So too does a State "suffer[] ... irreparable injury" whenever it is barred "from effectuating [laws] enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). In line with those consistent precedents, New Jersey's chief legal officer has a plainly significant interest in the validity of the Religious Aid Clause of the New Jersey Constitution—a provision with "deep roots in our State's history," *FFRF*, 181 A.3d at 997, and representing the legal will of the people of New Jersey—much as he would in the validity of any New Jersey law subjected to challenge. *Cf. Cameron*, 142 S. Ct. at 1011 (noting that while 28 U.S.C. § 2403(b), which addresses intervention where the constitutionality of state statutes is at issue, was "not directly applicable," it "nevertheless reflects the weighty interest that a State has in protecting its own laws"); *cf. also* Rule 5.1.

While federal precedent itself already establishes that the Attorney General has the requisite interest, New Jersey law confirms it. According due "respect for

state sovereignty" in this context entails looking to the authority and obligations of state officers to defend "sovereign interests." *Cameron*, 142 S. Ct. at 1011. New Jersey's chief legal officer, of course, represents those interests in court. *See, e.g.*, N.J. Stat. Ann. § 52:17A-4 (the Division of Law, headed by the Attorney General, has duty to "[e]nforce the provisions of the Constitution and all other laws of the State"). And New Jersey courts have repeatedly recognized that the Attorney General must be permitted to intervene in state-court litigation. *See, e.g.*, *Alexander v. New Jersey Power & Light Co.*, 122 A.2d 339, 343 (N.J. 1956) ("In equity, as at law, the Attorney-General has the right ... to intervene by suit for the protection of the ... interests of the public, where such are directly involved."); *Van Ness v. Borough of Deal*, 352 A.2d 599, 605 (N.J. Super. Ct. Ch. Div. 1975) ("[T]he Attorney General must determine whether the State is interested in any situation."), *rev'd on other grounds*, 367 A.2d 1191 (N.J. Super. Ct. App. Div. 1976). Against this backdrop, the second factor for intervention as of right is clearly satisfied.

    C.    <u>The Attorney General's Interests Are Not Adequately Represented And May Be Otherwise Impaired</u>.

        *1.*    *The Attorney General's And The County's Interests Differ.*

The remaining factors in the Rule 24(a)(2) analysis—the adequacy of existing representation of the Attorney General's interests, and the threat to those interests if intervention is denied—also compel granting the Attorney General's motion. A proposed intervenor need only satisfy a "minimal" burden, *Berger*, 142 S. Ct. at

2203, of showing that existing representation of its interests "*may* be inadequate," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added; cleaned up); *see Commonwealth of Pennsylvania v. President United States of Am.*, 888 F.3d 52, 60 (3d Cir. 2018) (same). And as Plaintiffs acknowledge in their opposition to the Foundation's motion to intervene (ECF 21 at 6-7), that burden is satisfied by a showing that the would-be intervenor's interests and those of the existing parties "diverge sufficiently" such that no "existing party can[] devote proper attention to the [movants'] interests." *United States v. Territory of Virgin Islands*, 748 F.3d 514, 520 (3d Cir. 2014).[1] Any daylight between the movant's interests and those of an existing party is generally enough to warrant intervention. *See, e.g.*, *Commonwealth of Pennsylvania*, 888 F.3d at 61; *Virgin Islands*, 748 F.3d at 520-22; *see also* Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1909 (3d ed.) ("[Even] if the absentee's interest is similar to, but not identical with, that of one of the parties ... intervention ordinarily should be allowed.").

That standard is easily met here because the County's interests are narrower than, and different from, than the Attorney General's. The County is defending the validity of the rules governing its county-wide historic preservation program and its application of the Religious Aid Clause in the context of that specific program. And

---

[1] Representation may also be inadequate because of "collusion between the representative party and the opposing party" or because "the representative party is not diligently prosecuting the suit." *Virgin Islands*, 748 F.3d at 520.

those rules are the direct consequence of the New Jersey Supreme Court's judgment

in *FFRF*, by which the County is bound. The County is not considering the impact

of the Religious Aid Clause elsewhere in the State or on other programs.

The Attorney General's interests, on the other hand, are broader. The Attorney

General, in his capacity as New Jersey's chief legal officer, has a unique interest in

defending the validity of the New Jersey Constitution within the limits set by the

U.S. Constitution. That means that in this case, the Attorney General is concerned

not only with the validity of one county's historic-preservation program, but also

with the effects that any ruling in this case may have on the validity of this centuries-

old proviso of New Jersey's Constitution and how it affects entities across the State.

Because Plaintiffs already recognize (at ECF 21 at 5) that "[a] State is presumed to

speak in the best interest of [its] citizens," they could hardly dispute that the Attorney

General is an appropriate representative of New Jerseyans' interests in defending the

New Jersey Constitution.[2] No other party in this suit can represent those interests.

Still more, the Attorney General has a recurring interest in how and when the

State's constitutional provisions, and state-court opinions interpreting them, may be

subject to collateral challenge in the federal courts. *Cf. Peruta v. Cnty. of San Diego*,

---

[2] Although the Foundation is not currently a party to the litigation, its intervention would not change the analysis with respect to the Attorney General. The Foundation's "interest is personal to it," while the Attorney General is uniquely charged with defending "the public welfare." *See Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).

824 F.3d 919, 940-41 (9th Cir. 2016) (permitting intervention by State of California where challenge to local law implicated the "constitutionality [California's] entire [statutory] scheme," which meant "no party" could otherwise "fully represent [the State's] interests"). Because that is a second recognized sovereign interest at stake here, it is a second reason the Attorney General has a right to intervene.

>        *2. The Attorney General's Proposed Approach Reflects Distinct Interests.*

The Attorney General's proposed actions in this case—specifically, urging a path forward that avoids an untenable clash between state and federal courts, in addition to defending the legality of a state constitutional provision—underscore that this motion should be granted.

New Jersey, like any state, has a strong interest in minimizing conflict between its law and federal law. This case casts that interest into particularly sharp relief, because the course Plaintiffs urge—and to which existing Defendants have not yet objected—would put the two on an unnecessary collision course. After all, everyone agrees that the New Jersey Supreme Court ruled in *FFRF* that the New Jersey Constitution's Religious Aid Clause prohibits certain types of direct religious funding, and that this prohibition does not violate the federal Free Exercise Clause. *See FFRF*, 181 A.3d at 1006, 1012. But Plaintiffs now argue, in light of more recent Supreme Court precedent, that the federal Free Exercise Clause compels the precise result that the New Jersey Supreme Court's decision already forbids. *See* Pls'. Mot.

for Summ. Judg., ECF 18 at 11; *see id.* at 19. Put another way, if Plaintiffs were to prevail, entities across New Jersey would be put to the impossible choice of either (1) violating this Court's interpretation of the U.S. Constitution or (2) violating the New Jersey Supreme Court's decision, which already construed that same provision of the U.S. Constitution. Because neither this Court nor the New Jersey Supreme Court can countermand the other's interpretation of federal law, *see, e.g.*, *U.S. ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1076 (7th Cir. 1970); *Lockhart v. Fretwell*, 506 U.S. 364, 376 (1993) (Thomas, J., concurring), that is unworkable.

Rather, as the Attorney General will argue if permitted to intervene, this Court should avoid that untenable conflict by recognizing that the proper venue for this dispute, in the first instance, is in the New Jersey state courts. The most straightforward basis for that result is the *Pullman* abstention doctrine. *See Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). "One of the main purposes of *Pullman* abstention is 'to avoid deciding a federal constitutional question when the question may be disposed on questions of state law.'" *Phila. City Council v. Schweiker*, 40 F. App'x 672, 675 (3d Cir. 2002) (quoting *Chiropractic Am. v. Lavecchia,* 180 F.3d 99, 103 (3d Cir. 1999)). Another is to "avoid 'needless friction with state policies.'" *Id.* (quoting *Planned Parenthood of Central N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000)). Put differently, abstention is particularly appropriate if a state court's interpretation "might avoid in whole or in part the

necessity for federal constitutional adjudication, or at least materially change the nature of the problem." *Harrison v. Nat'l Ass'n for the Advancement of Colored People*, 360 U.S. 167, 177 (1959). That is obviously true where, as here, the New Jersey Supreme Court's understanding of the scope of the New Jersey Constitution's Religious Aid Clause is related to the scope of the federal Free Exercise Clause. *See FFRF*, 181 A.3d at 1005-12; *cf. N.J. State Bd. of Higher Educ. v. Bd. of Dirs. of Shelton Coll.*, 448 A.2d 988, 992 (N.J. 1982) (state constitutional avoidance doctrine). Any change in its interpretation in light of subsequent guidance provided by the U.S. Supreme Court as to the scope of Free Exercise rights——the entire basis for Plaintiffs' attack on *FRRF*—could eliminate or substantially cabin the entire dispute on state-law grounds.

If this motion to intervene is granted, the Attorney General anticipates swiftly filing a motion to dismiss the complaint (or alternatively to hold it in abeyance) on *Pullman* abstention grounds.[3] Dismissal (or abeyance) on *Pullman* grounds would then allow the Plaintiffs the opportunity to initiate a state-court proceeding to resolve

---

[3] The Attorney General notes that certification is an expedient route that federal courts often take to resolve similar issues. *See generally Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 75–76 (1997) (citing benefits of certification). Certification, however, may not be available here. *See* N.J. Ct. Rule 2:12A-1 (expressly permitting certification from the Third Circuit, but not mentioning the district court). When that is the case, "a federal court not infrequently will stay its hand, remitting the parties to the state court to resolve the controlling state law on which the federal rule may turn." *Lehman Bros. v. Schein*, 416 U.S. 386 (1974).

the state constitutional question (the interpretation of New Jersey's Religious Aid Clause) that is inextricably intertwined with their federal (Free Exercise) claim.

If this Court were not inclined to dismiss (or hold) the matter, the Attorney General would then ask this Court to permit discovery prior to resuming summary-judgment briefing, for substantially similar reasons to those the Foundation offers. *See* Foundation's Reply Br., ECF 24 at 7-8. At this stage, however, it is clear that neither the County nor the Foundation is pursuing the approach the State seeks to take—and that is enough to satisfy the Attorney General's minimal burden, at this stage, of establishing inadequate representation under Rule 24(a).

## II.   ALTERNATIVELY, THIS COURT SHOULD GRANT THE ATTORNEY GENERAL PERMISSIVE INTERVENTION.

Even if this Court does not grant intervention as of right under Rule 24(a)(2), it should exercise its discretion to grant permissive intervention under Rule 24(b). Rule 24(b) states that a "court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), and that in "exercising its discretion, the [district court] must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3). "District courts have broader discretion in making a determination about whether permissive intervention is appropriate as opposed to intervention as of right." *Virgin Islands*, 748 F.3d at 524. In this way, Rule 24(b) serves as a backstop to safeguard the interests of proposed

intervenors, affording district courts discretion to permit an intervenor to advance important, inadequately-represented interests even when intervention is not strictly required. *See McKay v. Heyison*, 614 F.2d 899, 906 (3d Cir. 1980). Here, all the reasons the Attorney General should be permitted to intervene as of right only further underscore that intervention is at least appropriate under Rule 24(b).

In addition, the spirit of Rule 24(b)(2)(A) confirms that allowing intervention would be especially justified here. Similar to 28 U.S.C. § 2403(b), Rule 24(b)(2)(A) provides for permissive intervention, as relevant, by a "state government officer … if a party's claim or defense is based on … a statute … administered by the officer or agency." While Rule 24(b)(2)(A) "is not directly applicable in this case" because the case hinges on a constitutional provision, rather than a statute, "it nevertheless reflects the weighty interest that a State has in protecting its own laws." *Cf. Cameron*, 142 S. Ct. at 1011 (citing 28 U.S.C. § 2403(b) and Rule 24(a)(1)). It follows by even stronger logic that what state officers should be granted leave to do with regard to their state's statutes, they should also be granted leave to do with regard to their state's constitution.

## CONCLUSION

This Court should grant the Attorney General's motion to intervene.

Respectfully submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:    _/s/ Michael L. Zuckerman_

Deputy Solicitor General

Dated: September 25, 2023

## CERTIFICATE OF SERVICE

I certify that on September 25, 2023, I electronically filed the foregoing brief and accompanying papers with the Clerk of the U.S. District Court for the District of New Jersey. Counsel for all parties will be served via CM/ECF.

_/s/ Michael L. Zuckerman_

Deputy Solicitor General

Dated: September 25, 2023