# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE MENDHAM METHODIST CHURCH; and THE ZION LUTHERAN CHURCH LONG VALLEY, | ) ) ) ) | |
| | ) | Civil Action No. |
| Plaintiffs, | ) | 2:23-cv-02347-EP-JSA |
| | ) | |
| v. | ) | |
| | ) | |
| MORRIS COUNTY, NEW JERSEY et al., | ) ) | Plaintiffs' Opposition to the New Jersey Attorney General's Motion to Intervene |
| | ) | |
| Defendants. | ) | |
| | ) | |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................... 1

    A.    The Court Should Deny the Attorney General's Motion. ........ 2

    B.    If the Court Permits the Attorney General to Intervene, It Should Ensure Prompt Resolution of Plaintiffs' Claims. ................................................................ 8

    C.    If the Court Grants the Attorney General's Motion, It Should Deny Private Party Movants' Motion to Intervene. ............................................................... 9

CONCLUSION ..................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Carson v. Makin,*
  142 S.Ct. 1987 (2022) ................................................................ 2, 3, 4

*Cohen v. Chase Bank, N.A.,*
  679 F. Supp. 2d 582 (D.N.J. 2010) ........................................................ 6

*Freedom From Religion Foundation v. Morris County Board
  of Chosen Freeholders,*
  181 A.3d 992 (N.J. 2018) ........................................................ *passim*

*Harris v. Pernsley,*
  820 F.2d 592 (3d Cir. 1987) ................................................................ 3

*Hawaii Housing Auth. v. Midkiff,*
  467 U.S. 229 (1984) ................................................................ 5

*Hoots v. Com. of Pa.,*
  672 F.2d 1133 (3d Cir. 1982) ................................................................ 7

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder,*
  72 F.3d 361 (3d Cir. 1995) ................................................................ 3

*Railroad Commission of Texas v. Pullman Company,*
  312 U.S. 496 (1941) ................................................................ 5

CONSTITUTIONAL AUTHORITIES

U.S. Const. Amendment I ................................................................ 6, 7, 8

OTHER AUTHORITIES

Fed. R. Civ. P. 24(a)(2) ................................................................ 2

Fed. R. Civ. P. 24(b)(1)(B) ................................................................ 7

Fed. R. Civ. P. 24(b)(3) ................................................................................. 8

N.J. Ct. R. 2:12A-1........................................................................................ 6

Plaintiffs hereby oppose the New Jersey Attorney General's motion to intervene, ECF No. 26, and brief in support of intervention, ECF No. 26-1 ("Br."), and state as follows:

## INTRODUCTION

The Attorney General seeks to intervene in this litigation to "defend the constitutionality" of the New Jersey Constitution's Religious Aid Clause as interpreted by the New Jersey Supreme Court in *Freedom From Religion Foundation v. Morris County Board of Chosen Freeholders*, 181 A.3d 992 (N.J. 2018) ("*FFRF*"). Br. 6. In *FFRF*, the New Jersey Supreme Court held that the "plain language" of the New Jersey Constitution's Religious Aid Clause prohibits Morris County from awarding historic preservation grant funding to churches. 181 A.3d at 1004. It then concluded that this prohibition does not run afoul of the federal Constitution. *Id.* at 1006. In this case, Plaintiffs claim that Morris County's religious exclusion policy violates the federal Free Exercise Clause, among other guarantees of the federal Constitution. Although no state official appeared as a party to *FFRF*, the Attorney General contends that he "has a plainly significant interest in the validity of the Religious Aid Clause of the New Jersey Constitution." Br. 7.

The Court should deny the Attorney General's motion to intervene because there is no legitimate state antiestablishment interest in excluding Plaintiffs from eligibility for Morris County's historic preservation grants. As the Supreme Court has made clear since the decision in *FFRF*, under the federal Free Exercise Clause, "[a] State's antiestablishment interest does not justify" policies like the County's that "exclude some members of the community from an otherwise generally available public benefit because of their religious exercise." *Carson v. Makin*, 142 S.Ct. 1987, 1998 (2022). In all events, the Attorney General's motion to intervene does not justify—through discovery, abstention, or otherwise—further delay in resolving Plaintiffs' claims under the federal Constitution.

### A.   The Court Should Deny the Attorney General's Motion.

**1.**  The Court should not permit the Attorney General to intervene as of right because there is no legitimate antiestablishment interest in denying Plaintiffs' eligibility for historic preservation funds under Morris County's policy.

To intervene as of right under Rule 24(a)(2), a proposed intervenor must show, among other things, "a tangible threat to a legally cognizable

interest." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (citation omitted). The Attorney General here seeks to intervene to defend "the constitutionality of the Religious Aid Clause in light of *FFRF*." Br. 3. And he seeks to do so using a strategy that differs from the current Defendants'. Br. 10-12. Those interests do not justify intervention in this case.

First, any interest in enforcing the Religious Aid Clause to deny Plaintiffs' eligibility for historic preservation grants is not "legally cognizable," *Mountain Top Condo. Ass'n*, 72 F.3d at 366, but instead foreclosed by Supreme Court precedent. The Supreme Court has made clear that an "interest in separating church and state 'more fiercely' than the Federal Constitution … 'cannot qualify as compelling' in the face of the infringement of free exercise." *Carson*, 142 S. Ct. at 1998. And excluding Plaintiffs from eligibility for Morris County's "otherwise generally available" historic preservation grants "because of their religious exercise" is precisely that—an "infringement of free exercise" and "discrimination against religion." *Id.* There is thus no legally cognizable interest in "assuring" the persistence of these "unconstitutional conditions." *Harris v. Pernsley*, 820 F.2d 592, 601 (3d

Cir. 1987). And while the Attorney General now asserts a "significant interest," Br. 7, in defending the New Jersey Supreme Court's interpretation of the Religious Aid Clause in *FFRF*, neither the Attorney General nor any other New Jersey state officer appeared as a party to *FFRF*, despite the fact that the validity of the Religious Aid Clause was squarely disputed in that case. Any newly-minted antiestablishment interest in denying Plaintiffs' eligibility for grant funds is not legally cognizable after *Carson*.

This case is no "collateral attack," Br. 1, on the *FFRF* opinion; Plaintiffs seek only a straightforward application of the Supreme Court's opinion in *Carson*. The meaning of New Jersey's Religious Aid Clause is not disputed in this case. This case turns instead on a purely legal federal question—the meaning of the federal Free Exercise Clause. Even assuming that the New Jersey Supreme Court was right to conclude in *FFRF* that Morris County's religious exclusion policy did not violate the federal Free Exercise Clause, it reached that conclusion based on its "understanding of the [then-]current state of the law," 181 A.3d at 1006—*i.e.*, before *Carson*. An opinion of this Court reaching a different conclusion under the intervening and clarifying decision in *Carson* poses

no risk of "an untenable clash between state and federal courts," Br. 11, that requires the Attorney General's intervention.

Second, the Attorney General claims a distinct interest in this case based on his plan to take a different briefing approach than the County has taken—arguing that this Court should abstain under *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941). Br. 12. The Attorney General's proposed approach is puzzling and wrong, making this asserted interest in intervention weak. *Pullman* abstention is designed to empower state courts to resolve "difficult and *un*settled questions of *state law* … before a substantial federal constitutional question can be decided." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (emphases added). But this case concerns the guarantees of the federal Free Exercise Clause, not the "interpretation of New Jersey's Religious Aid Clause," Br. 14. And far from being unsettled, the meaning of the Religious Aid Clause has been conclusively determined by the New Jersey Supreme Court. In *FFRF*, the New Jersey Supreme Court interpreted the meaning of the Religious Aid Clause—based on the "plain language" of that provision—before ever considering its interaction with

the federal Constitution. 181 A.3d at 1004. Thus there is no point of state law to clarify.

Moreover, the approach the Attorney General proposes would impose significant delay and waste both judicial and party resources. Even if it were in dispute here—and it is not—this Court cannot certify a question about the meaning of the Religious Aid Clause to the New Jersey Supreme Court. *Compare* Br. 13 n.3 *with* N.J. Ct. R. 2:12A-1; *see Cohen v. Chase Bank, N.A.*, 679 F. Supp. 2d 582, 590 n.6 (D.N.J. 2010) ("[A]lthough the New Jersey Supreme Court accepts certified questions of state law from the Third Circuit Court of Appeals, … it does not accept certified questions from the District Court for the District of New Jersey."). Instead, the Attorney General apparently would have Plaintiffs pursue their solely *federal* claims in New Jersey Superior Court; litigate the case through all levels of the New Jersey courts; and then presumably, if necessary, seek relief from the United States Supreme Court. Br. 13.

That delay would exacerbate the ongoing irreparable harm Plaintiffs face as a result of the County's denial of their First Amendment rights, particularly given that the required repairs to their church buildings grow only more urgent as time passes. Before the proposed

intervenors filed their motions, the existing parties had agreed to—and the Court had entered—a schedule for summary judgment briefing under which briefing on the merits of Plaintiffs' claims would have been completed this month. *See* ECF No. 15. The Attorney General now proposes instead to seek to require Plaintiffs to litigate through every level of the New Jersey court system—and perhaps at the United States Supreme Court—before receiving a remedy for their ongoing federal constitutional injury. Br. 13. Plaintiffs expressly reserve their right to seek further equitable relief in the event the Attorney General's intervention threatens to delay further the resolution of their claims on the merits.

**2.** Permissive intervention is likewise inappropriate for many of the same reasons, including particularly the risk of delay and attendant ongoing First Amendment harm.

Rule 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). While "a denial of intervention as of right does not automatically mandate a denial of permissive intervention," it may

significantly inform the permissive-intervention analysis. *Hoots v. Com. of Pa.*, 672 F.2d 1133, 1136 (3d Cir. 1982). In particular, "[i]n exercising its discretion," a Court considering a motion for permissive intervention must assess "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As explained, the course the Attorney General proposes would inflict just such undue delay, which counsels against permissive intervention. Again, Plaintiffs expressly reserve their right to seek further equitable relief as necessary to avoid such prolonged First Amendment harm.

**B.    If the Court Permits the Attorney General to Intervene, It Should Ensure Prompt Resolution of Plaintiffs' Claims.**

If the Court nevertheless permits the Attorney General to intervene, it should ensure prompt resolution of Plaintiffs' claims on the merits. In addition to proposed motions practice, the Attorney General asserts that he will seek discovery "for substantially similar reasons to those the [Freedom From Religion] Foundation offers" in its request to intervene. Br. 14. But discovery is unnecessary and would be inappropriate in this case—and the case schedule should proceed quickly—for the reasons

8

explained in Plaintiffs' opposition to the motion to intervene filed by private parties (the "Private Party Movants"), ECF No. 21 at 12–13.

The claims in this case require no discovery because they present pure questions of law. As the parties to this litigation stipulated, there are no relevant disputed facts. *See* ECF No. 18-1 at 4 n.1. The County's program rules are public, as are the grants that the County has issued under those rules. The only question is whether the federal Free Exercise Clause permits the County to exclude religious organizations from eligibility for those grants because of their religious purposes and exercise. If the Court permits any discovery, Plaintiffs respectfully suggest that it should be limited in time and form, as Plaintiffs argued in opposition to the Private Party Movants' motion to intervene. *See* ECF No. 21 at 12–13.

## C.   If the Court Grants the Attorney General's Motion, It Should Deny Private Party Movants' Motion to Intervene.

Intervention by the Attorney General would also make intervention by the Private Party Movants unnecessary and duplicative of existing briefing and argument—an additional reason to deny their motion to intervene.

The Attorney General's asserted interests in the Religious Aid Clause subsume the Private Party Movants' asserted interests in this case. The Attorney General seeks to "represent[] the legal will of the people of New Jersey," including as to "the Religious Aid Clause of the New Jersey Constitution." Br. 7. By the same token, the Private Party Movants claim to represent "members who pay taxes in Morris County" and assert "a personal interest in seeing that the No Aid Clause of the New Jersey Constitution is enforced." ECF No. 24 at 5. Any interests the Attorney General represents necessarily include those the Private Party Movants assert. Permitting two intervenors to propound nearly identical arguments will increase the cost and length of the litigation, and will increase the amount of work for the Court and the parties. As such, if the Court grants the Attorney General's motion to intervene, it should deny that of the Private Party Movants.

## CONCLUSION

For the reasons above, Plaintiffs oppose the Attorney General's request for intervention. In the event the Court grants the Motion, Plaintiffs oppose any expansion of discovery or further delay to the resolution of their federal claims. Plaintiffs reserve the right to pursue

10

further equitable relief in the event that the Attorney General's intervention threatens further delay to the resolution of their federal constitutional claims.

Dated: October 23, 2023          Respectfully submitted,


/s Mark Roselli
Mark Roselli
Roselli Griegel Lozier & Lazarro, PC
1337 Highway 33
Hamilton, New Jersey 08690
Telephone: (609) 586-2257
mroselli@roselligriegel.com

Noel J. Francisco
(*pro hac vice*)
Megan Lacy Owen
(*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
njfrancisco@jonesday.com
mlacyowen@jonesday.com

J. Benjamin Aguiñaga
(*pro hac vice*)
JONES DAY
2727 North Harwood Street Suite
500
Dallas, Texas 75201
Telephone: (214) 220-3939
jbaguinaga@jonesday.com

Jeremy Dys
(*pro hac vice*)

12

Ryan Gardner (*pro hac vice*)
First Liberty Institute
2001 W. Plano Pkwy, Suite 1600
Plano, TX 75075
Telephone: (972) 941-4444
jdys@firstliberty.org
rgardner@firstliberty.org

Eric C. Rassbach
(*pro hac vice*)
The Hugh and Hazel Darling
Foundation Religious Liberty Clinic
Pepperdine University Caruso
School of Law
24225 Pacific Coast Highway
Malibu, CA 90263
Telephone: (310) 506-4611
eric.rassbach@pepperdine.edu

*Attorneys for Plaintiffs*
*The Mendham Methodist Church*
*and*
*The Zion Lutheran Church Long*
*Valley*

13

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2023, a copy of the foregoing was served on all participants in this case via the Court's CM/ECF system.

*s/ Mark Roselli*