UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE MENDHAM METHODIST CHURCH; and THE ZION LUTHERAN CHURCH LONG VALLEY,<br><br>　Plaintiffs,<br><br>　v.<br><br>MORRIS COUNTY, NEW JERSEY; MORRIS COUNTY BOARD OF COUNTY COMMISSIONERS; MORRIS COUNTY HISTORIC PRESERVATION TRUST FUND REVIEW BOARD; and JOHN KRICKUS, in his official capacity as Commissioner Director for the Morris County Board of County Commissioners,<br><br>　Defendants. | Hon. Evelyn Padin, U.S.D.J.<br>Hon. Jessica S. Allen, U.S.M.J.<br><br>Docket No. 2:23-cv-2347-EP-JSA |

REPLY BRIEF IN SUPPORT OF PROPOSED DEFENDANT-INTERVENOR
NEW JERSEY ATTORNEY GENERAL'S MOTION TO INTERVENE

　　　　　　　　　　　　　　MATTHEW J. PLATKIN
　　　　　　　　　　　　　　ATTORNEY GENERAL OF NEW JERSEY
　　　　　　　　　　　　　　R.J. Hughes Justice Complex
　　　　　　　　　　　　　　25 Market Street, P.O. Box 080
　　　　　　　　　　　　　　Trenton, New Jersey 08625

Jeremy M. Feigenbaum (NJ Bar No. 117762014)
　*Solicitor General*

Michael L. Zuckerman (NJ Bar No. 427282022)
　*Deputy Solicitor General*

Nathaniel I. Levy (NJ Bar No. 386322021)
Christopher Ioannou (NJ Bar No. 429912023)
　*Deputy Attorneys General*

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..................................................................................................................2

    I.    THIS COURT SHOULD ALLOW THE NJAG TO INTERVENE.............2

    II.    PLAINTIFFS' OBJECTIONS ARE IRRELEVANT AT THIS STAGE.....4

CONCLUSION .............................................................................................................10

CERTIFICATE OF SERVICE .....................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                      **Page(s)**

*ACLU of N.J. v. Hendricks*,
  183 A.3d 931 (N.J. 2018)......................................................................................9

*ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*,
  309 F.R.D. 191 (D.N.J. 2015)................................................................................2

*Berger v. N.C. State Conf. of the NAACP*,
  142 S. Ct. 2191 (2022)......................................................................................3, 7

*Boutros v. Restrepo*,
  321 F.R.D. 103 (D.N.J. 2017)................................................................................2

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
  142 S. Ct. 1002 (2022)............................................................................. 3, 4, 5, 7

*Carson v. Makin*,
  142 S. Ct. 1987 (2022)...........................................................................................4

*Colby v. J.C. Penney Co.*,
  811 F.2d 1119 (7th Cir. 1987) ...............................................................................7

*Committee to Recall Robert Menendez from the Office of U.S. Senator v. Wells*,
  7 A.3d 720 (N.J. 2010)...........................................................................................8

*Feller v. Brock*,
  802 F.2d 722 (4th Cir. 1986) .................................................................................7

*Freedom From Religion Foundation v. Morris County Board of Chosen*
  *Freeholders*, 181 A.3d 992 (N.J. 2018).............................................................1, 5

*Georgevich v. Strauss*,
  772 F.2d 1078 (3d Cir. 1985) (en banc) ................................................................9

*Harris v. Pernsley*,
  820 F.2d 592 (3d Cir. 1987)...................................................................................5

*In re Contest of Nov. 8, 2011 Gen. Election of Office of N.J. Gen. Assembly*,
   40 A.3d 684 (N.J. 2012) ............................................................................................8

*Lockhart v. Fretwell*,
   506 U.S. 364 (1993) ..................................................................................................6

*N.J. Democratic Party v. Samson*,
   814 A.2d 1028 (N.J. 2002) ........................................................................................9

*Railroad Commission of Texas v. Pullman Co.*,
   312 U.S. 496 (1941) ..................................................................................................6

*Reetz v. Bozanich*,
   397 U.S. 82 (1970) ....................................................................................................8

*State v. Fortin*,
   969 A.2d 1133 (N.J. 2009) ........................................................................................8

*State v. Johnson*,
   766 A.2d 1126 (N.J. 2001) ........................................................................................8

*State v. Zito*,
   254 A.2d 769 (N.J. 1969) ..........................................................................................8

*U.S. ex rel. Lawrence v. Woods*,
   432 F.2d 1072 (7th Cir. 1970) ...................................................................................6

*United States v. Territory of Virgin Islands*,
   748 F.3d 514 (3d Cir. 2014) ......................................................................................3

**Constitutional Provisions**

N.J. Const. art. I, ¶ 3 ................................................................................... *passim*

**Statutes**

N.J. Stat. Ann. § 52:17A-4 ............................................................................................5

**Regulations**

28 U.S.C. § 2403 ...........................................................................................................3

**Court Rules**

Fed. R. Civ. P. 5.1 ................................................................................................3

Fed. R. Civ. P. 24 ......................................................................................... 2, 3, 4

N.J. Ct. R. 2:12-1 ...................................................................................................9

**PRELIMINARY STATEMENT**

In arguing that the New Jersey Attorney General (NJAG) may not intervene in a challenge to a provision of the New Jersey Constitution, Plaintiffs dispute much about the merits, but little about the standard for intervention. They do not dispute that the test is liberally construed. They do not dispute that the Attorney General's intervention motion is timely, since the case has not progressed beyond its nascent stages. They do not dispute that the NJAG has interests that cannot be adequately represented by any other party. And they do not dispute that, if they were challenging a New Jersey *statute*, intervention would be clear-cut—and that it therefore stretches logic to suggest that New Jersey's chief legal officer should be denied intervention where plaintiffs challenge the New Jersey Constitution.

Instead, Plaintiffs lodge three disagreements, but none supports denying intervention. First, Plaintiffs claim that any state interest in the State Constitution's Religious Aid Clause (RAC), N.J. Const. art. I, ¶ 3, is invalid under Supreme Court precedent, but that simply presupposes the answer to the case's core merits question—a debate that is premature here. Second, Plaintiffs argue that their suit is not itself a collateral attack on *Freedom From Religion Foundation v. Morris County Board of Chosen Freeholders*, 181 A.3d 992 (N.J. 2018) (*FFRF*), but that overlooks that the *result* of ruling in Plaintiffs' favor would require New Jersey public entities to disregard either a decision of this Court *or* of the New Jersey Supreme Court,

1

neither of which can countermand the other's interpretation of the First Amendment. Finally, Plaintiffs forecast that they will oppose abstention and any delays they perceive to be unwarranted, but they again mistakenly treat future disagreements as bearing on the threshold intervention inquiry, in addition to assuming (without grounds) that abstention would lead to any meaningful delays. None of that offers a basis to deny intervention, and this Court should grant the NJAG's motion.

## ARGUMENT

**I.     THIS COURT SHOULD ALLOW THE NJAG TO INTERVENE.**

The NJAG's moving papers already laid out why this challenge to the New Jersey Constitution meets the blackletter standard for intervention under Rule 24, whether as of right under Rule 24(a) or with permission under Rule 24(b).[1] *See* ECF 26-1 (Mot.) at 4-15. As Plaintiffs concede, the standard is liberally construed, *e.g.*, *ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*, 309 F.R.D. 191, 192 (D.N.J. 2015), and here, the NJAG's motion satisfies each of the relevant factors: it is timely (and thus would prejudice no party), given how little the merits have yet advanced, *e.g.*, *Boutros v. Restrepo*, 321 F.R.D. 103, 106 (D.N.J. 2017); the NJAG has an undeniable interest in the validity of the RAC (as with any New Jersey

---

[1] Because "all the reasons the [NJAG] should be permitted to intervene as of right" under Rule 24(a) "only further underscore that [permissive] intervention is at least appropriate under Rule 24(b)," Mot. 15, this Reply addresses those reasons in a single discussion for purposes of concision.

2

constitutional provision), *e.g.*, *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1011 (2022), and in avoiding an unworkable clash between federal and state courts; and those interests may be impaired without NJAG involvement—a "minimal" burden, *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2203 (2022)—given that no other party shares the NJAG's same, statewide interests, and thus no "existing party can[] devote proper attention to the [NJAG's] interests," *see United States v. Territory of Virgin Islands*, 748 F.3d 514, 520 (3d Cir. 2014).

Plaintiffs tacitly accept virtually all of those points, as they must. *See* ECF 28 (Opp.) at 3-5. They do not dispute the liberal standard for granting such motions. Nor do they dispute the timeliness of the NJAG's motion, or the existence of a distinct interest held by New Jersey's chief legal officer in the federal constitutionality of a New Jersey constitutional provision. Nor do they dispute that the spirit of the federal law and rules that protect and bolster the opportunity for state officers to intervene when state *statutes* are called into question, *e.g.*, 28 U.S.C. § 2403(b); Fed. R. Civ. P. 5.1(a), 24(b)(2), counsels just as strongly in favor of allowing the same officers to intervene when state *constitutional provisions* are called into question. Indeed, it is undeniable that a State's interest in defending the "continued enforceability" of its law is not only "legitimate," but "sounds in deeper, constitutional considerations," *Cameron*, 142 S. Ct. at 1010-11; *see also Berger*, 142 S. Ct. at 2201, and thus "that a State's opportunity to defend its laws in federal court

3

should not be lightly cut off," *Cameron*, 142 S. Ct. at 1011—including the opportunity to defend its own constitution.

## II.   PLAINTIFFS' OBJECTIONS ARE IRRELEVANT AT THIS STAGE.

Plaintiffs instead primarily argue the merits, note one conclusory objection to the NJAG's intervention, and preview their disagreement regarding abstention—none of which offers any basis to deny the NJAG's motion to intervene.

*First*, Plaintiffs' contention that the State's interest in the RAC's validity is "foreclosed by Supreme Court precedent," Opp. 3, simply assumes the answer to this case's central merits question. In Plaintiffs' view, the County's operation of its grant program, consistent with the New Jersey Supreme Court's interpretation of the RAC in *FFRF*, is an "infringement of free exercise" under *Carson v. Makin*, 142 S. Ct. 1987 (2022), and thus the NJAG cannot have a valid interest in intervening to defend the RAC. *See* Opp. 3. That puts the cart before the horse. After all, Plaintiffs brought this suit to ask this Court to decide that question in a merits judgment. *See, e.g.*, ECF 18 at 11, 18-20. The only question before the Court here is whether the NJAG has satisfied Rule 24 so as to be able to *litigate* that merits question as a party—an inquiry that does not involve assessing who is *correct* about that question.

Plaintiffs' attempt to diminish the NJAG's interest in defending the RAC by citing *Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987), *see* Opp. 3-4, is unavailing. There, the Third Circuit denied the Philadelphia District Attorney's (DA's) motion

4

to intervene in litigation brought by private plaintiffs against municipal defendants regarding jail conditions in Philadelphia. Because the DA had no relevant "legal duties or powers" over those facilities and no "function in the[ir] administration," the court explained, he had no right to intervene, whether to defend the conditions or to participate in consent-decree negotiations. *Id.* at 600; *see id.* at 601-603. In other words, the DA's status was markedly distinct from the NJAG's here, given that the NJAG has a duty to enforce the New Jersey Constitution, along with the rest of state law, and stands in shoes different from Morris County's. *See* N.J. Stat. Ann. § 52:17A-4(h); *see also* Mot. 6-8; *Cameron*, 142 S. Ct. at 1010-11.

Plaintiffs also err in claiming that the NJAG's interest is "newly-minted," Opp. 4. While the NJAG did not *intervene* in the *FFRF* state-court litigation, he did participate as amicus curiae on behalf of a state entity, the New Jersey Historic Trust. *See FFRF*, 181 A.3d at 997. Indeed, the State regularly attends to its interests in state-court appellate proceedings that way, which reflects the broader role that New Jersey courts generally afford amici. Here, meanwhile, there is additional cause for intervention, given that the NJAG seeks to advance an approach that no other party is pursuing. And regardless, it would be passing strange to deny intervention to a movant simply because that movant chose to participate as an amicus rather than as an intervenor in a different case in a different court on a different posture.

5

*Second*, that Plaintiffs offer no more than conclusory disagreement that their challenge amounts to a collateral attack on *FFRF*, Opp. 4, reveals their lack of an answer to the untenable collision course the NJAG's motion discussed, *see* Mot. 11-12. After all, Plaintiffs do not dispute (nor could they) that neither this Court nor the New Jersey Supreme Court can countermand the other's interpretation of the federal Free Exercise Clause. *See U.S. ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1076 (7th Cir. 1970); *Lockhart v. Fretwell*, 506 U.S. 364, 376 (1993) (Thomas, J., concurring); Mot. 12. And they acknowledge that the New Jersey Supreme Court in *FFRF* interpreted the Free Exercise Clause. *See* Opp. 5-6. Thus, while Plaintiffs note that other U.S. Supreme Court precedent has issued in the five years since *FFRF*, they offer no answer to the collision-course problem: that if this Court were to issue the ruling that Plaintiffs seek (which, to be clear, is a question to be addressed at the merits stage, not intervention), it would put public entities across New Jersey to the impossible choice of either (1) violating this Court's decision interpreting the Free Exercise Clause, or (2) violating the New Jersey Supreme Court's decision that *also* interpreted the Free Exercise Clause (and the RAC) in *FFRF*. Because neither of those decisions could trump the other, a merits judgment for Plaintiffs would present an unworkable state of affairs—a conclusion that Plaintiffs tellingly brush past.

*Third*, Plaintiffs register concerns about possible abstention under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), as well as their fear of

other delays in this litigation, but those objections have no bearing on this specific intervention question, and in any event are misguided. To begin, that Plaintiffs believe NJAG's "proposed approach" to avoiding the potential collision course just discussed "is puzzling and wrong," Opp. 5, is a legal debate to be had at a later stage, when the NJAG makes such a motion—not a reason that the NJAG would *lack* an interest in avoiding such a collision between the state and federal courts to support his intervention. Indeed, Plaintiffs themselves do not dispute that the interest exists, *see* Opp. 5 (calling it only "weak"), and regardless do not contest that this interest in avoiding irresolvable conflicts between dual sovereigns is additional to the NJAG's separate, foundational interest in the validity of New Jersey law, *see, e.g.*, *Cameron*, 142 S. Ct. at 1010-11; *Berger*, 142 S. Ct. at 2201; Mot. 6-8.

In any event, Plaintiffs offer no basis to overlook the grounds for abstention here. When facing potential clashes with the decisions of coordinate courts, federal courts regularly invoke principles of comity to avoid such conflicts (whether through abstention or some other tool), recognizing that conflicting judgments work a "grave disservice to the public interest in the orderly administration of justice." *Feller v. Brock*, 802 F.2d 722, 727 (4th Cir. 1986); *see id.* at 727-28 ("Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders."); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) ("Where different outcomes would place the defendant under inconsistent legal duties, the case for the

second court's not going into conflict with the first is particularly strong."). And while Plaintiffs argue that there are no lingering questions about the meaning of the RAC, Opp. 5-6, that is both irrelevant—because an unworkable clash could result either way—and incorrect, because the New Jersey Supreme Court, if it found Plaintiffs' arguments persuasive, could consider a narrowing construction of the RAC, given its power to definitively interpret state law and New Jersey's traditions of constitutional avoidance, harmonious interpretation, and "judicial surgery." *See, e.g.*, *In re Contest of Nov. 8, 2011 Gen. Election of Office of N.J. Gen. Assembly*, 40 A.3d 684, 706 (N.J. 2012); *Committee to Recall Robert Menendez from the Office of U.S. Senator v. Wells*, 7 A.3d 720, 750 (N.J. 2010); *State v. Fortin*, 969 A.2d 1133, 1140 (N.J. 2009); *State v. Johnson*, 766 A.2d 1126, 1136 (N.J. 2001); *State v. Zito*, 254 A.2d 769, 775 (N.J. 1969). Only the New Jersey Supreme Court would have that panoply of options, which underscores why—even *without* the risk of the federal-state clash just discussed—it would be the preferable forum. *See, e.g.*, *Reetz v. Bozanich*, 397 U.S. 82, 87 (1970) (noting "classic case" of *Pullman* is when "the nub of the whole controversy may be the state constitution").

Plaintiffs' fears of any potential delay are similarly premature and, regardless, misplaced. As to prematurity, the question here is not whether to abstain or what procedures to order, but rather whether allowing the NJAG to intervene—and thus affording the NJAG the opportunity to argue for abstention—would cause an

intolerably delay. *See* Mot. 5-6. And Plaintiffs have tacitly conceded that it would not, given that they do not dispute the intervention motion's timeliness or the fact that this proceeding remains in its earliest stages. *See supra* at 2-3.[2]

And even if this Court did consider Plaintiffs' concerns about hypothetical future delays at this stage, were this Court to grant the NJAG's intervention motion and subsequently decide to abstain under *Pullman*, any resulting state-court proceeding could "definitively [be] resolved in short order." *Georgevich v. Strauss*, 772 F.2d 1078, 1094 (3d Cir. 1985) (en banc), *cert. denied,* 475 U.S. 1028 (1986). Plaintiffs could, for instance, ask the New Jersey Supreme Court to "certify [the] action … for appeal" directly from the state trial court under N.J. Court Rule 2:12-1, as in *FFRF* itself. 181 A.3d at 997; *see also N.J. Democratic Party v. Samson*, 814 A.2d 1028, 1032 (N.J. 2002) (another example of direct certification). Thus, while "the possibility of delay alone should not serve as the basis for eschewing abstention" in these circumstances, *see Georgevich*, 772 F.2d at 1094, there are in any event procedural pathways available for efficient resolution here.

---

[2] The same logic applies to Plaintiffs' concerns about discovery. *See* Opp. 8-9. As noted, understanding how Morris County's program intersects with both the RAC and the Free Exercise Clause would require at least some factual development. *See* Mot. 14; *cf. ACLU of N.J. v. Hendricks*, 183 A.3d 931, 941 (N.J. 2018) (remanding for fact-gathering in different religious-funding challenge implicating the RAC). But that has no bearing on whether the NJAG has met the standard for intervention, and is simply a question that would have to be addressed at the proper time, with the benefit of relevant briefing.

## **CONCLUSION**

This Court should grant the Attorney General's motion to intervene.

>Respectfully submitted,
>
>MATTHEW J. PLATKIN
>ATTORNEY GENERAL OF NEW JERSEY
>
>By:  */s/ Michael L. Zuckerman*
>Michael L. Zuckerman
>Deputy Solicitor General

Dated: October 30, 2023

## CERTIFICATE OF SERVICE

I certify that on October 30, 2023, I electronically filed the foregoing brief and accompanying papers with the Clerk of the U.S. District Court for the District of New Jersey. Counsel for all parties will be served via CM/ECF.

                                              */s/ Michael L. Zuckerman*
                                              Michael L. Zuckerman
                                              Deputy Solicitor General

Dated: October 30, 2023