<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE MENDHAM METHODIST CHURCH; and THE ZION LUTHERAN CHURCH LONG VALLEY,<br><br>                              Plaintiffs,<br><br>v.<br><br>MORRIS COUNTY, NEW JERSEY; MORRIS COUNTY BOARD OF COUNTY COMMISSIONERS; MORRIS COUNTY HISTORIC PRESERVATION TRUST FUND REVIEW BOARD; and JOHN KRICKUS, in his official capacity as Commissioner Director for the Morris County Board of County Commissioners,<br><br>                              Defendants. | Case No. 23cv2347 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

This action involves a dispute over whether the New Jersey Constitution's Religious Aid Clause violates the United States Constitution's Free Exercise Clause. Plaintiffs Mendham Methodist Church and Zion Lutheran Church Long Valley ("Plaintiffs") separately applied for and were denied historical preservation grants for church repairs. D.E. 11 ("Compl." or "Complaint.") Together, Plaintiffs sue various Morris County government entities and officials (collectively, "Defendants"), alleging Defendants violated Plaintiffs' First Amendment rights. *Id.* The Freedom From Religion Foundation ("FFRF") and member David Steketee, a Morris County resident and taxpayer, move to intervene, as does the New Jersey Attorney General ("Attorney General"). D.E.s 16, 26. The Court decides the motions on the papers. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b). For the reasons below, the Court will **GRANT** the Attorney General's motion and will **DENY** FFRF's motion.

I.  **BACKGROUND**[1]

Since 2003, "Defendants [have] administer[ed] a Historic Preservation Trust Fund[,]" (the "Fund") which is "funded by a county property tax." Compl. ¶ 2. "Through th[e Fund], Morris County distributes money to eligible organizations for the repair, restoration, and preservation of historic local buildings and resources." *Id.* From 2003 to 2017, churches and religious organizations with historical significance were eligible for and received funding. *Id.* ¶ 3.

But in 2018, the New Jersey Supreme Court decided *Freedom From Religion Foundation v. Morris County Board of Chosen Freeholders*, 232 N.J. 543 (2018). *Id.* ¶ 4. In that case (the "State Case"), FFRF and Steketee, an FFRF member and Morris County resident and taxpayer, argued that the Fund's $4.6 million in grants to repair churches violated the Religious Aid Clause.[2] The New Jersey Supreme Court agreed, finding that the Religious Aid Clause "bars the use of taxpayer funds to repair and restore churches," and that Defendants' program "ran afoul of that longstanding provision." *Freedom From Religion Found.*, 232 N.J. at 548. Additionally, the Court found that the Religious Aid Clause did not violate the First Amendment's Free Exercise Clause. *Id.*

Plaintiffs are two churches in Morris County that "applied for grants to repair their historic church buildings." *Id.* ¶ 5. Relying on the State Case, Defendants, who administer the Fund, rejected Plaintiffs' applications because "a church is 'ineligible' for funding if it is 'currently used for religious purposes or functions.'" *Id.*

---

[1] This section derives mainly from the well-pleaded factual allegations in the Complaint.
[2] "No person shall . . . be obliged to pay . . . taxes for building or repairing any church or churches, place or places of worship, or for the maintenance of any minister or ministry." N.J. CONST. ART. I ¶ 3.

Plaintiffs then filed this 42 U.S.C. § 1983 action against Defendants, alleging five counts of First and Fourteenth Amendments violations. *See generally* Compl. On July 26, 2023, the parties jointly moved to:

> (1) order the . . . agreed-on schedule for briefing on the parties' forthcoming cross-motions for summary judgment;
> (2) dispense with the parties' obligation to file statements of material fact with their cross-motions for summary judgment;
> (3) permit the parties to submit a stipulated statement of undisputed material facts in conjunction with Plaintiffs' motion for summary judgment; and
> (4) dispense with Defendants' obligation to file an Answer.

D.E. 13 at 2-3. The parties agreed that "this case presents constitutional questions that can properly be resolved through dispositive motions, without the need for discovery." *Id.* at 1. The Court granted the motion. D.E. 15.

On August 10, 2023, FFRF and Steketee (hereinafter collectively, "FFRF") moved to intervene. D.E. 16 ("FFRF Mot."). Plaintiffs oppose. D.E. 21 ("Pls. FFRF Opp'n"). FFRF replies. D.E. 24 ("FFRF Reply").

On September 25, 2023, the Attorney General also moved to intervene. D.E. 26 ("AG Mot."). Plaintiffs oppose. D.E. 28 ("Pls. AG Opp'n"). The Attorney General replies. D.E. 29 ("AG Reply").

Defendants do not oppose either intervention motion but maintain that formal discovery is not required.[3] D.E.s 20, 27.

## II.   LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 24, a movant may intervene in an ongoing action either (1) as a matter of right or (2) by a court's permission. Fed. R. Civ. P. 24(a)-(b).

---

[3] The Court defers discovery issues to Magistrate Judge Allen.

### A. Fed. R. Civ. P. 24(a): Right to Intervene

A court *must* permit a movant to intervene if the movant:

> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(1)-(2). "To intervene . . . under Rule 24(a)(2), it is axiomatic that the [movant] establish that: '(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter[,] by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.'" *Conforti v. Hanlon*, 2023 WL 2744020, at *2 (D.N.J. Mar. 31, 2023) (quoting *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005)).

### B. Fed. R. Civ. P. 24(b): Permission to Intervene

Alternatively, a court may permit a movant to intervene if, in addition to the application being timely, the movant (1) "is given a conditional right to intervene by a federal statute"; (2) "has a claim or defense that shares with the main action a common question of law or fact"; or (3) is a federal or state governmental officer or agency and the movant's "claim or defense is based on: (A) a statute or executive order administered by the officer or agency[,] or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(1)-(2). "In exercising its discretion, [a] court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

4

III.   ANALYSIS

   A. The Attorney General Has a Right to Intervene

To demonstrate a right to intervene, the Attorney General must establish that (1) his motion is timely, (2) he has a sufficient interest in the litigation, (3) this interest may be affected or impaired by the disposition of the litigation, and (4) this interest is not adequately represented by Defendants. *See Conforti*, 2023 WL 2744020, at *2. Because the Attorney General has established these requirements, the Court must permit the Attorney General to intervene.

First, the Attorney General's Motion is timely. The timeliness of a motion to intervene is determined from all of the circumstances, including "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (citing *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982)). "[T]he critical inquiry is: what proceedings of substance on the merits have occurred?" *Id.*

Plaintiffs do not argue, nor does the Court find, that the Attorney General's Motion is untimely. The Court has not ruled on any substantive issue, and no dispositive motions have been fully briefed. Indeed, the case was less than five months old when the Attorney General moved to intervene. *See generally* Compl. Because the case is at such an early stage, the Attorney General's intervention would not prejudice the parties. *See, e.g.*, *Mountain Top Condo.*, 72 F.3d at 371 (finding the movant's intervention would not prejudice the existing parties because though "some written discovery and settlement negotiations had occurred[,] . . . [no] decrees [were] entered during the four[-]year period in question"); *Boutros v. Restrepo*, 321 F.R.D. 103, 106 (D.N.J. 2017) (finding a motion to intervene was timely where "no dispositive motions ha[d] been filed").

5

The Attorney General has also demonstrated a sufficient interest.  To intervene, the Attorney General must demonstrate a "legal interest" in the litigation that faces "a tangible threat" depending on the disposition of the litigation.  *Id.* (quoting *Mountain Top Condo.*, 72 F.3d at 366).  This analysis is "liberally construe[d] . . . in favor of intervention."  *Id.* (quoting *NLRB v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992)).

The Attorney General argues that he has a recognized right, pursuant to New Jersey's sovereign powers, to defend the constitutionality of the Religious Aid Clause when its future enforcement is threatened.  *See* AG Mot. at 6.  Plaintiffs argue this is not a legally cognizable interest because Supreme Court precedent establishes that "excluding Plaintiffs from eligibility for Morris County's . . . historic preservation grants" infringes on Plaintiffs' First Amendment rights, and the Attorney General cannot claim an interest in defending an unconstitutional provision.  Pls. AG Opp'n at 3.

But Plaintiffs put the cart before the horse.  The constitutionality of the Religious Aid Clause is the issue before the Court.  Though Plaintiffs seek to prevent the enforcement of this clause, the Court agrees that the Attorney General has a right to defend its enforcement pursuant to New Jersey's sovereign powers.  *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022) (finding the lower court erred in denying the Kentucky Attorney General's motion to intervene to defend a state abortion law because "[p]aramount among the States' retained sovereign powers is the power to enact and enforce any laws that do not conflict with federal law").[4]

---

[4] Plaintiffs also argue the Attorney General cannot claim an interest in *this* case because he did not intervene in the State Case.  Pls. AG Opp'n at 4.  Plaintiffs cite no authority to support that a state waives its sovereign powers to intervene in one case by choosing, pursuant to these powers, to not intervene in an earlier case.  Additionally, while the Attorney General did not intervene in the State

Lastly, the Attorney General's interests are not adequately represented by Defendants.

> Inadequate representation can be based on any of three possible grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit.

*United States v. Virgin Islands*, 748 F.3d 514, 520 (3d Cir. 2014) (cleaned up). This is a "minimal" burden, and "is satisfied if the applicant shows that representation of his interest may be inadequate[] . . . ." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (cleaned up).

The Attorney General argues that his interests diverge sufficiently from Defendants' interest because Defendants' interests are narrower. AG Mot. at 9. Defendants are "defending the validity of the rules governing [the] county-wide preservation program and [the] application of the Religious Aid Clause in the context of that specific program[,]" whereas "the Attorney General is concerned not only with the validity of [Defendants' program]," but also the effects a ruling might have as applied to entities across New Jersey. *Id.* at 9-10. Additionally, the Attorney General argues its initial approach to the case diverges from Defendants, as he plans to move to dismiss[5] the case under the *Pullman* abstention doctrine, whereas Defendants elected to proceed to summary judgment. *Id.* at 12-13 (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)). Under this doctrine, a court may defer deciding a federal law issue if the resolution of a state law issue would moot the need to decide the federal law issue. *See generally Pullman*, 312

---

Case, "he did participate as amicus curiae on behalf of a state entity, the New Jersey Historic Trust." AG Reply at 5 (citing *Freedom From Religion Found.*, 232 N.J. at 553).

[5] Parties should review the Court's judicial preferences, specifically Section II(E)(i), prior to moving to dismiss.

U.S. 496. Plaintiffs argue the Attorney General's interests will be adequately protected because the *Pullman* abstention doctrine is not applicable, and as such, motion practice would waste the Court's time and resources. Pls. AG Opp'n at 5-7.

Like before, Plaintiffs put the cart before the horse;[6] the Court may later decide the applicability of the *Pullman* abstention doctrine, but it is irrelevant now. But regardless of the merits of the Attorney General's argument, "a difference of opinion concerning the tactics with which the litigation should be handled" does not, on its own, justify intervention. *Virgin Islands*, 784 F.3d at 522 (cleaned up).

However, intervention is justified because Defendants' interests in the County's historical preservation program are narrower than the Attorney General's statewide interests. *See Pennsylvania v. President United States of Am.*, 888 F.3d 52, 60 (3d Cir. 2018) (permitting intervention where the parties had similar, but not "nearly identical" interests); *Cameron*, 595 U.S. at 277 (applying considerations of state sovereignty in finding the Kentucky Attorney General had a right to intervene even though a different state government entity was a already a party).

Because the Attorney General has established all four criteria for intervention as a right, the Court must permit the Attorney General to intervene.[7]

**B. FFRF Does Not Have a Right to Intervene Nor Will the Court Permit Intervention**

*1. FFRF does not have a right to intervene*

To demonstrate a right to intervene, FFRF must establish that (1) its motion is timely; (2) it has a sufficient interest in the litigation; (3) this interest may be affected or impaired by the

---

[6] *See supra* Section III(A).
[7] Even if the Attorney General did not have a right to intervene, the Court would, pursuant to its broad discretion, permit intervention for the aforementioned reasons. *See Virgin Islands*, 748 F.3d at 524.

disposition of the litigation; and (4) this interest is not adequately represented by Defendants or, now, the Attorney General. *See Conforti*, 2023 WL 2744020, at *2.

Again, Plaintiffs do not argue, nor does the Court find, that FFRF's Motion is untimely. *See* Pls. FFRF Opp'n at 2-3. In fact, FFRF's Motion was filed over a month before the Attorney General's Motion, which the Court already found was timely.[8]

However, FFRF does not articulate a legally cognizable interest. FFRF claims an interest in the State Case judgment, which threatens to be overturned by the disposition of this case. FFRF Mot. at 3. But the State Case involved "a pure question of law" and was not based on facts specific to FFRF. *Freedom From Rel. Found.*, 232 N.J. at 553. As a non-profit organization, FFRF's interest is representative of Steketee's: a Morris County taxpayer. *Id.* at 551; *see also* FFRF Reply at 5 (claiming Steketee has a "personal interest in seeing that the [Religious] Aid Clause of the New Jersey Constitution is enforced[,]" and FFRF's interest is that of "representative standing for its members who pay taxes in Morris County").

Plaintiffs argue, and the Court agrees, that "the mere fact that a proposed intervenor previously obtained a judgment against a government defendant does not give it a right to intervene every time *someone else* sues that same government defendant." Pls. FFRF Opp'n at 5 (emphasis in original). FFRF cites no case law to support its theory that a previously obtained judgment on a purely legal issue, where the judgment affects all taxpayers equally, is sufficient for intervention. *Compare New Jersey v. New York*, 345 U.S. 369, 353 (1953) ("An intervenor whose state is already a party should have the burden of showing some compelling interest in his own right, apart from his interest in a class with all other citizens and creatures of the state . . . .") *with Pennsylvania*, 888 F.3d at 58 (emphasis added) (permitting a non-profit to intervene when the state was a party

---

[8] *Supra* Section III(A).

9

because in addition to involvement in related prior litigation, the movants could be "forced to choose between violating their faith and *paying crippling fines*" depending on the judgment).

And even if the prior judgment was a legally cognizable interest, FFRF cannot demonstrate that its interests are inadequately represented. The Attorney General represents the interest of all New Jersey citizens and taxpayers, including Morris County taxpayers. "A presumption of adequacy attaches . . . if one party is a government entity charged by law with representing the interests of the applicant for intervention." *Virgin Islands*, 748 F.3d at 520. Because Steketee's interest is not unique and is shared by all Morris County taxpayers, the Attorney General, in connection with its sovereign powers, is presumed to be an adequate representative.

Accordingly, FFRF does not have a right to intervene.

2. *The Court will not permit FFRF to intervene*

A court has "broader discretion in making a determination about whether permissive intervention is appropriate as opposed to intervention as of right." *Virgin Islands*, 48 F.3d at 524. Though "denial of intervention as of right does not automatically mandate a denial of permissive intervention[,]" the reasons for the denial can inform a court's decision on permissive intervention. *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982). Thus, despite the FFRF Motion's timeliness, "where, as here, the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion" to deny permissive intervention. *Id.*

As discussed above, FFRF's interests as a taxpayer are subsumed by the Attorney General's interests in all New Jersey taxpayers via its sovereign powers, and the Attorney General's representation has been deemed adequate.[9]

---

[9] *Supra* Section III(B)(i).

10

Accordingly, the Court will not permit FFRF to intervene.

IV. **CONCLUSION**

For the reasons stated above, the Court will **GRANT** the Attorney General's Motion to Intervene, D.E. 26, and **DENY** FFRF's Motion to Intervene, D.E. 16. An appropriate Order accompanies this Opinion.

Dated: February 5, 2024

Evelyn Padin, U.S.D.J.