THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE MENDHAM METHODIST CHURCH; and THE ZION LUTHERAN CHURCH LONG VALLEY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:23-cv-02347-EP-JSA |
| v. | ) ) | |
| MORRIS COUNTY, NEW JERSEY, et al., | ) ) ) | Plaintiffs' Reply In Support Of Motion For Preliminary Injunction |
| Defendants; | ) ) | |
| ATTORNEY GENERAL of NEW JERSEY, | ) ) ) | |
| Intervenor-Defendant. | ) ) | |

Jeremy Dys (*pro hac vice*)
Ryan Gardner (*pro hac vice*)
First Liberty Institute
2001 W. Plano Pkwy, Suite 1600
Plano, TX 75075

Camille P. Varone (*pro hac vice*)
First Liberty Institute
1331 Pennsylvania Avenue, NW,
Suite 1410
Washington, DC 20004

Eric C. Rassbach (*pro hac vice*)
The Hugh and Hazel Darling
Foundation Religious Liberty Clinic
Pepperdine University Caruso
School of Law
24225 Pacific Coast Highway
Malibu, CA 90263

Mark Roselli (NJ Bar No. 038431988)
Roselli Griegel Lozier, PC
1337 Highway 33
Hamilton, NJ 08690
Telephone: (609) 586-2257
mroselli@roselligriegel.com

Noel J. Francisco (*pro hac vice*)
Megan Lacy Owen (*pro hac vice*)
Christopher C. Pagliarella (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone: (202) 879-3939
njfrancisco@jonesday.com

*(Additional contact information for counsel in signature)*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT .........................................................................................................3

    I.    Controlling Precedent Resolves the Free Exercise Merits...................3

    II.   The Churches Have Shown Irreparable Harm. ................................7

    III.  The Equities Favor The Churches.....................................................12

CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*,
  777 F. Supp. 2d 424 (E.D.N.Y. 2011) ...................................................9

*Carson v. Makin*,
  596 U.S. 767 (2022)......................................................................*passim*

*Del. State Sportsmen's Assoc., Inc. v. Del. Dep't of Safety &*
  *Homeland Sec.*,
  2024 WL 3406290 (3d Cir. 2024) .......................................................9

*Elrod v. Burns*,
  427 U.S. 347 (1976)............................................................................8

*Espinoza v. Mont. Dep't of Revenue*,
  591 U.S. 464 (2020)......................................................................*passim*

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*,
  82 F.4th 664 (9th Cir. 2023) ................................................................7

*FFRF v. Morris Cnty. Bd. of Chosen Freeholders*,
  181 A.3d 992 (N.J. 2018) ................................................................6, 7

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*,
  710 F.3d 99 (3d Cir. 2013) .............................................................7, 8

*Locke v. Davey*,
  540 U.S. 712 (2004).....................................................................1, 3, 4

*Logic Tech. Dev. LLC v. Levy*,
  2021 WL 3884287 (D.N.J. Aug. 31, 2021) .......................................11

*Masterpiece Cakeshop Inc. v. Elenis*,
  445 F. Supp. 3d 1226 (D. Colo. 2019)...............................................12

*Minard Run Oil Co. v. U.S. Forest Serv.*,
  670 F.3d 236 (3d Cir. 2011) ..............................................................9

*N.J.-Phila. Presbytery v. N.J. State Bd. of Higher Educ.*,
  654 F.2d 868 (3d Cir. 1981) ............................................................14

*Ne. Pa. Freethought Soc'y v. County of Lackawanna*,
  938 F.3d 424 (3d Cir. 2019) ..........................................................7, 8

*PennEnvironment v. PPG Indus., Inc.*,
  2014 WL 6982461 (W.D. Pa. Dec. 10, 2014) ...................................11

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
  592 U.S. 14 (2020)...................................................................*passim*

*SI Handling Sys., Inc. v. Heisley*,
  753 F.2d 1244 (3d Cir. 1985) ..........................................................11

*Stuart Circle Par. v. Bd. of Zoning Appeals*,
  946 F. Supp. 1225 (E.D. Va. 1996) .................................................12

*Tandon v. Newsom*,
  593 U.S. 61 (2021).........................................................................7, 8

*Tenafly Eruv Ass'n v. Borough of Tenafly*,
  309 F.3d 144 (3d Cir. 2002) ..........................................................7, 8

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  582 U.S. 449 (2017)...................................................................*passim*

*Tripathy v. Lockwood*,
  2022 WL 17751273 (2d Cir. Dec. 19, 2022)....................................11

*Wood v. Fla. Dep't of Educ.*,
  2024 WL 1536749 (N.D. Fla. Apr. 9, 2024) ....................................11

*Zwickler v. Koota*,
  389 U.S. 241 (1967).........................................................................10

## OTHER AUTHORITIES

*Ahavas Sholom*, New Jersey Historic Trust ................................................................13

Brief of Amicus Curiae New Jersey Historic Trust, *FFRF v. Morris
    Cnty. Bd. of Chosen Freeholders*, 181 A.3d 992 (N.J. 2018) (No.
    A-71) ................................................................................................6, 7, 14

*FAQs*, *Nat'l Register of Historic Places*, Nat'l Park Serv .......................................13

Historic Preservation Trust Fund, Rules and Regulations § 5.4.5 ...........................10

*National Register Database and Research*, Nat'l Park Serv. ..................................13

N.J. Admin. Code § 7:4-2.3 .......................................................................................13

*N.J. and Nat'l Registers of Historic Places: Cape May Cty.,*
    N.J. Historic Pres. Off. ...................................................................................13

*N.J. and Nat'l Registers of Historic Places: Essex Cty.,* N.J. Historic
    Pres. Off. ........................................................................................................13

## PRELIMINARY STATEMENT

The Attorney General does not dispute any of the key facts showing the Churches are entitled to a preliminary injunction. He does not dispute that the Churches are qualified, but for their religious activities, to seek County historical preservation funds. Nor that the Churches' applications were denied solely because of those religious activities. Nor that the Churches' properties will continue to deteriorate absent equal access to these funds. Those concessions make this motion straightforward: because the Churches are "otherwise eligible," they may not be excluded from funding "on the basis of their religious exercise" or "anticipated religious use of the benefits." *Carson v. Makin*, 596 U.S. 767, 789 (2022).

The Attorney General nevertheless contends that "a 'historic and substantial' state interest" justifies the otherwise-qualified churches' exclusion. Opp. 2 (quoting *Locke v. Davey*, 540 U.S. 712, 725 (2004)). But the Supreme Court has "already explained why *Locke* can be of no help" in this context. *Carson*, 596 U.S. at 788–89. The same nondiscrimination test applies to *all* state funding programs, whether direct funding of churches or indirect funding of schools, and the historical interest the Attorney General asserts is indistinguishable from those the Supreme Court has rejected time and again. *See Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 481–82 (2020).

1

The Churches have, at a minimum, demonstrated a reasonable likelihood of success on the merits because the County's rule "puts [them] to a choice" between "participat[ion] in an otherwise available benefit program or remain[ing] a religious institution." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 4662 (2017). That alone shows irreparable harm, wholly apart from the continued deterioration of the Churches' buildings, since "the loss of First Amendment freedoms unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020). In response, the Attorney General never cites or distinguishes *Cuomo* or other key First Amendment cases, instead invoking standards from other inapposite contexts.

The Attorney General's equitable arguments fare no better. It was his intervention in this case that postponed resolution of the Churches' already-filed motion for summary judgment seeking to put a *permanent* end to their First Amendment injury. Now the abstention he seeks—for the puzzling purpose of arguing that that state courts should *adhere* to binding New Jersey Supreme Court precedent, Opp. 5 n.1—would further delay relief and exacerbate the Churches' irreparable First Amendment injury. The equities thus favor the Churches' request for modest injunctive relief to permit them to apply on equal terms pending final judgment.

**ARGUMENT**

**I.     Controlling Precedent Resolves the Free Exercise Merits.**

Two Supreme Court holdings resolve the merits of this case. *First*, a house of worship cannot be denied access to "a public benefit for which it is otherwise qualified, solely because it is a church." *Trinity Lutheran*, 582 U.S. at 467. *Second*, access to such a benefit cannot be withheld "on the basis of [the] anticipated religious use of the benefits." *Carson*, 596 U.S. at 789.

In response, the Attorney General invokes a line from *Locke* that permitted a state to deny "funding [to] the pursuit of devotional degrees" (even as it funded programs at "pervasively religious schools" including such courses) in light of a "historic and substantial state interest" against taxation "to support church leaders." 540 U.S. at 722–25; *see* Opp. 12. This argument, however, runs headlong into the Supreme Court's own application of *Locke*. The Court has made clear in recent years that (1) *Locke* related solely to permitting a program to exclude "a distinct category of instruction": training "to lead a congregation," *Espinoza*, 591 U.S. at 479; and (2) "*Locke* cannot be read beyond its narrow focus on vocational religious degrees" to otherwise limit public funds based on "anticipated religious use." *Carson*, 596 U.S. at 789. The Supreme Court has likewise explained that *Locke* does not authorize exclusion based on an entity's status as a church, *Trinity Lutheran*, 582 U.S. at 464,

or withholding funds from an *approved* category of applicants because the use will be religious, *Carson*, 596 U.S. at 788–89.

Here, it is undisputed that the Churches engage in the *precise* task the County otherwise funds—historical preservation of physical structures—rather than some "distinct" religious exercise. They are excluded from those generally available grant funds only because the structure to be preserved will be used to host religious services, among other purposes. The proper analogy would not be *Locke*'s refusal to cover a distinct category of degrees relating to ministry alone, but a refusal to fund a theology degree *only when* it would be pursued for religious uses—which restriction a "State's antiestablishment interest" cannot justify. *Carson*, 596 U.S. at 781, 787–88; *see Trinity Lutheran*, 582 U.S. at 465 ("*Locke* took account of Washington's antiestablishment interest only after determining" that the scholarship program accommodated many religious uses of its funds). So *Locke* does not apply here.

Even if the Supreme Court had not already ruled out application of *Locke*'s exception for "historic and substantial" interests in this context, the Attorney General's definition of the State's interest would still conflict with Supreme Court precedent. The Attorney General argues that "schools and churches are not similarly situated" under the First Amendment and "indirect funding is different from direct funding," such that a tradition of excluding churches from otherwise-available funds

4

may stand. Opp. 31. But *Trinity Lutheran* rejected as "odious to our Constitution" a church's exclusion from a direct-funding program available to other entities, including schools, "solely because it is a church." 582 U.S. at 467. Likewise, *Espinoza* and *Carson* gave identical treatment to churches providing education services and other schools, and to direct and indirect funding. In invalidating a law prohibiting aid to schools "controlled in whole or in part by churches," *Espinoza* grounds itself in a nationwide history of government funding of religious schools hosted and sponsored *by churches*, *see* 591 U.S. at 476, 480–81. The Supreme Court explained that this history included direct "grants," as when "Congress *paid churches* to run schools for American Indians." *Id.* at 480–81 (emphasis added). Indeed, the two schools at issue in *Carson* were respectively "a ministry of Bangor Baptist Church" and "affiliated with Centerpoint Community Church." 596 U.S. at 775–76. And both *Espinoza* and *Carson* framed themselves as elaborating *Trinity Lutheran*, itself a direct-funding case, without suggesting any distinction between direct and indirect funding. 591 U.S. at 478–79; 596 U.S. at 780–82.

The tendentious historical analysis put forth by the Attorney General's chosen historian and articles is thus entirely beside the point, because it cannot be employed to stop the application of on-point Supreme Court precedent. Much of that history is offered to assert that New Jersey's No-Aid Clause's adoption or retention shares no common heritage with "anti-Catholic" Blaine Amendments. Opp. 23. The point is

irrelevant. True, in *Espinoza*, the Supreme Court noted that "many" nineteenth-century no-aid clauses arose from that "checkered tradition." 591 U.S. at 482. But it did not hold they *all* did. Nor did the Supreme Court's decision turn on any link to Blaine. Instead, the Court concluded that *no* "historic and substantial interest" evoked to defend such clauses could overcome the far more longstanding tradition of direct funding to religious institutions. *Id.* at 480–81. Indeed, the Supreme Court observed that "[e]ven States with bans on government-supported clergy, *such as New Jersey*, Pennsylvania, and Georgia, provided various forms of aid to religious schools." *Id.* at 481 (emphasis added).

So *Espinoza* well established that state interests reflected in historical no-aid clauses did not qualify as "historic and substantial." *Id.* at 480, 485. And if there were any doubt after *Espinoza*, in *Carson*, the Court applied and extended *Espinoza* to a policy first adopted in 1981, which was indisputably not a nineteenth-century Blaine Amendment. 596 U.S. at 774. Any historical debate thus provides no reason to deviate from the standard rule: public funds otherwise available to fund a specific activity may not be withheld based on church status or anticipated religious use.[1]

---

[1] The Court may, like the Attorney General, disregard FFRF's claim that the County's pre-2018 policy considered whether a grant would advance a church's religious mission (and thus raised a First Amendment problem). FFRF Br. 9–10. FFRF points to no such clause in the prior regulations and nothing in the current rules requires consideration of religious mission. *See* Brief of Amicus Curiae New Jersey Historic Trust at 19–21, *FFRF v. Morris Cnty. Bd. of Chosen Freeholders*,

## II.   The Churches Have Shown Irreparable Harm.

The irreparable harm analysis here is straightforward. First, the Churches' exclusion from grants is coercive because it "put[s]" them "to the choice" between "its religious character" and "participa[tion] in an otherwise generally available public benefit program, for which it is fully qualified." *Trinity Lutheran*, 582 U.S. at 465–66; *see* Churches Br. 33–35. Second, such "indirect coercion" is one way in which "a State 'punishe[s] the free exercise of religion,'" subject to the same limits as direct prohibitions. *Espinoza*, 591 U.S. at 478. Third, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Cuomo*, 592 U.S. at 19; *accord Tandon v. Newsom*, 593 U.S. 61, 64 (2021) (free exercise); *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013) (speech); *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 178 (3d Cir. 2002) (free exercise).

Accordingly, courts routinely issue preliminary injunctions against exclusions from government programs that violate the First Amendment, whether based on speech or religion. *See, e.g.*, *Ne. Pa. Freethought Soc'y v. County of Lackawanna*, 938 F.3d 424, 442 (3d Cir. 2019) (irreparable injury from denying atheist group's access to public advertising space); *Fellowship of Christian Athletes v. San Jose*

---

181 A.3d 992 (N.J. 2018) (No. A-71) (NJHT *FFRF* Br.), https://perma.cc/4MCH-3AU7 (brief by New Jersey Attorney General explaining errors in this argument about State and County funding).

*Unified Sch. Dist.*, 82 F.4th 664, 673, 694–95 (9th Cir. 2023) (en banc) (irreparable injury from refusing school recognition of religious club, which affected its "access to [school] financial accounts and [school]-sanctioned fundraisers"). Indeed, *Cuomo* itself took its free exercise rule straight from the free speech and association context. 592 U.S. at 19 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).

Tellingly, the Attorney General simply ignores the key precedents on irreparable injury. He does not cite the Supreme Court's decisions in *Cuomo* and *Tandon*, or the Third Circuit's decisions in *Freethought* or *Ayers*. And he engages with *Tenafly* only to note that the challenged regulation "prevent[ed] real-time religious worship" (without discussing the other harms at issue, or the legal rule *Tenafly* pronounced). Opp. 36. The Attorney General could not have distinguished these precedents if he had engaged with them.

The Attorney General's alternative approach—that the Churches suffer only "monetary" harm and should be governed by the standards applicable to ordinary monetary claims—mistakes both the law and the facts. Opp. 37. The Attorney General presumably agrees that "the owner of an old house *would* be slighted"—in more than just her pocketbook—"by not receiving a subsidy to repair an aging chimney" if the denial were based solely on her religion. Opp. 15 (emphasis added). So too, the constitutional harm here is not merely the denial of the grant, it is the coercion and discrimination: "the refusal to allow the Church[es]—solely because

[they are] church[es]—to compete with secular organizations for a grant." *Trinity Lutheran*, 582 U.S. at 463. Such "indirect coercion" "infringe[s]" free exercise, *id.*, and is irreparable. *Cuomo*, 592 U.S. at 19; *see Del. State Sportsmen's Assoc., Inc. v. Del. Dep't of Safety & Homeland Sec.*, 2024 WL 3406290, at *7 (3d Cir. 2024) ("[W]e presume that First Amendment harms are irreparable."). A contrary rule would defy the Supreme Court's clear holding that the "indirect coercion" of denying benefits to religious institutions "punishes the free exercise of religion" just as a direct prohibition does. *Espinoza*, 591 U.S. at 478 (bracket omitted).

Moreover, the Attorney General does not dispute that the Churches "face 'permanent' harm to their historic structures." Churches' Br. 34; *see* Jewish Coalition for Relig. Liberty Br. 5 ("Facing mounting repairs, many faith communities have been unable to preserve their historic buildings or had to abandon them altogether."). He disputes only whether this constitutes a distinct irreparable harm. *See* Opp. Br. 37–38. It plainly does. "[W]here 'interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest.'" *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 & n.14 (3d Cir. 2011). And where irreplaceable "historic landmark[s]" are at issue—here, landmarks that have housed religious communities since the 1800s— the "inadequacy of monetary compensation for any harm to" the landmark "is self evident." *Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 435–

36 (E.D.N.Y. 2011); *cf.* Historic Preservation Trust Fund, Rules and Regulations § 5.4.5, https://perma.cc/XE5D-4GRP (discussing "irreplaceable historic character" of preserved properties).

Apart from these doctrinal errors, the Attorney General is left with a single argument: that the Churches' supposed delay within litigation "counsels against" granting a preliminary injunction. Opp. 36. This argument is specious.

The Churches negotiated an expedited stipulated schedule for summary judgment briefing at the case's outset, and timely filed for summary judgment, precisely to prevent irreparable harm. On that schedule, approved by the Court, briefing would have been completed nine months ago. *See* ECF 15, 18. Intervention by the Attorney General (and FFRF) derailed that expedited process. And the Attorney General did so in order to make the bizarre argument that abstention and its attendant delay is necessary to allow New Jersey courts to *reaffirm* recent, unambiguous, and binding New Jersey Supreme Court precedent. The Attorney General cannot both cause the delay and then argue that preliminary relief is inappropriate as a result of such delay. That is particularly so because abstention "might itself effect the impermissible chilling of the very constitutional right [the plaintiff] seeks to protect"—making preliminary relief *more* necessary. *Zwickler v. Koota*, 389 U.S. 241, 252 (1967).

10

In any event, the delay is irrelevant to the irreparable harm the First Amendment injuries at issue here impose. *See Tripathy v. Lockwood*, 2022 WL 17751273, at *2 (2d Cir. Dec. 19, 2022) (error to rely on "29-month delay in moving for a preliminary injunction" to deny motion as free exercise claims are irreparable); *Wood v. Fla. Dep't of Educ.*, 2024 WL 1536749, at *18 (N.D. Fla. Apr. 9, 2024) ("Court's own research" and parties' briefing both revealed "no case where a court has found a direct-penalization First-Amendment violation but nonetheless declined to find irreparable harm because of a delay.").[2] This rule makes sense. In the ordinary civil case, litigation delay informs the "relevant inquiry [of] whether the movant is in danger of suffering irreparable harm at the time." *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985). But a harm that is "irreparable by its very nature" does "not become reparable (or 'less immediate') because of Plaintiffs' delay in filing for a preliminary injunction, whatever the reason." *PennEnvironment v. PPG Indus., Inc.*, 2014 WL 6982461, at *15 (W.D. Pa. Dec. 10, 2014).

Nor does the Attorney General seriously engage with the ways abstention and the resulting delay would exacerbate the Churches' irreparable harm. He mistakenly

---

[2] *Tripathy* directly distinguishes cases arising from the "intellectual property" context, 2022 WL 17751273, at *2. It is solely on those cases that the Attorney General relies in saying a delay of a year, or even "just weeks," could rebut irreparable harm. Opp. 36–37 (quoting *Logic Tech. Dev. LLC v. Levy*, 2021 WL 3884287, at *3 (D.N.J. Aug. 31, 2021)). That rule, of course, may make sense in assessing whether an ordinarily-reparable commercial harm is irreparable. But it is inapplicable where the harm is the deprivation of First Amendment rights.

claims that the Churches "concede" that "no case law disfavors abstaining in free-exercise disputes *specifically*." Opp. 10 (emphasis added). But the Churches explained that abstention is disfavored when *any* "First Amendment rights are involved." Churches' Br. 22 (citing cases). District courts have applied that general principle to Free Exercise claims. *Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1243 (D. Colo. 2019) (applying rule that "[c]ourts have been particularly reluctant to abstain" in First Amendment cases to Free Exercise claim); *see Stuart Circle Par. v. Bd. of Zoning Appeals*, 946 F. Supp. 1225, 1231 (E.D. Va. 1996) (denying abstention because awaiting "a definitive ruling from the state courts cannot be pursued with full protection of the plaintiffs' rights" where "the free exercise of religion, is at issue").[3]

## III.  The Equities Favor The Churches.

The Attorney General's arguments on the equities echo his arguments on the merits and fail for the same reasons. As explained, a misconceived antiestablishment interest does not outweigh free exercise rights, and the public has no interest in enforcing unconstitutional laws. *See* Churches' Br. 36–37.

---

[3] The Attorney General briefly argues the Churches cannot appeal to abstention principles applicable to facial challenges if their requested *injunction* would not facially invalidate any law, Opp. 35 n.5, but that confuses a request for preliminary relief with the full scope of this action.

12

The Attorney General and amicus FFRF, also assert that remedying the religious exclusion would favor some religions over others—in particular, those whose presence in the state may be more recent. Opp. 39–40 & n.6; FFRF Br. 7–8. Not so. The New Jersey Register of Historic Places is open to any building that "achieved significance" more than fifty years ago, and even that timeframe is waived for properties "of exceptional importance." N.J. Admin. Code § 7:4-2.3(a)(2), (a)(2)(vii). The National Register applies the same general rule and exception. *FAQs*, *Nat'l Register of Historic Places*, Nat'l Park Serv., https://perma.cc/5S68-FCHZ. Taking the Attorney General's examples in turn, a synagogue built in 1923, a Buddhist temple built in the 1940s, an Islamic mosque built in the 1920s, and a Catholic church built in 1905, would all be eligible for inclusion on the State and National Registers. Opp. 40 n.6. Indeed, the synagogue he mentions (Ahavas Shalom) *is* on the State and National Register,[4] and *has* received state historical preservation funds.[5]

---

[4] *N.J. and Nat'l Registers of Historic Places: Essex Cty.*, N.J. Historic Pres. Off., https://perma.cc/DN53-F2JP; *see also, e.g.*, *N.J. and Nat'l Registers of Historic Places: Cape May Cty.*, N.J. Historic Pres. Off., https://perma.cc/3SHS-65XV (Woodbine Brotherhood Synagogue). Outside New Jersey, the National Register includes houses of worship well beyond the Judeo-Christian tradition, including Islamic, Buddhist, and Baha'i houses of worship. *See National Register Database and Research*, Nat'l Park Serv., https://perma.cc/FM3C-FMD5 (Reference Nos. 96000516, 100006779, 100006348, 03001476, 78001140).

[5] *Ahavas Sholom*, New Jersey Historic Trust, https://perma.cc/R7J9-G8BA (detailing 2001 and 2002 Historic Site Management Grants).

In fact, just seven years ago in the *FFRF* litigation, when the New Jersey Attorney General's office *defended* religious institutions' equal access to historical preservation funds—disavowing the supposed "historical" interest he now asserts— he emphasized that the State's historical trust "has awarded grants to religious institutions of various faiths" for decades, listing Ahavas Sholom alongside other Jewish houses of worship. NJHT *FFRF* Br. 20 & n.9, https://perma.cc/4MCH-3AU7. The Attorney General was right in 2017 and is wrong now—it is the *exclusion* of religious institutions from equal access that harms minority adherents.

Moreover, the Attorney General's abstention arguments themselves *create* equitable problems. He not only fails to address the argument that abstention would exacerbate irreparable harm for purposes of their injunction request, Churches' Br. 35–36, but contends that abstention is appropriate whenever a plaintiff asks a "lower federal court to countermand" a state court's *federal* law conclusion, Opp. 10. That extreme position (which would surely surprise habeas petitioners and other civil rights litigants) would in fact shift equitable considerations in the Churches' favor, as a preliminary injunction would be the *only* means of obtaining federal court relief without formally countermanding state courts—since a preliminary injunction, as a nonfinal decision, "is not a final interpretation of state law." *N.J.-Phila. Presbytery v. N.J. State Bd. of Higher Educ.*, 654 F.2d 868, 887 (3d Cir. 1981).

As a coda, Morris County suggests that retroactive relief could raise practical concerns or disrupt its 2024 grant process. ECF 60 at 2–3. For clarity, the Churches seek no retroactive relief, only forward-looking equal participation in the next (2025) cycle. Given that the Attorney General objects to the swift summary judgment resolution the Churches had negotiated with the County, preliminary injunctive relief is the only way for the Churches to timely apply in that cycle, even if the Court declines to abstain. As to Morris County's view that any relief should extend to all religious entities, the Churches limited their injunction request only because preliminary relief on a constitutional question is often limited to the parties, even if ultimate relief would benefit others similarly situated. *See Cuomo*, 592 U.S. at 15. But the Churches have no objection to broader relief if the Court believes it is empowered to grant such relief at this stage and intend to seek ultimate relief that would extend to others.[6]

## CONCLUSION

For the foregoing reasons, the Churches respectfully request that this Court grant their motion for a preliminary injunction.

---

[6] Notably, Morris County does not appear to share the Attorney General's concern that the County would face conflicting injunctions or even "contempt" of state court, Opp. 9, if equitable relief was issued here. In any event, those concerns are misplaced, as the Attorney General never disputes that the prior state litigation produced no injunction binding the County or any state party. *See* Churches' Br. 25.

Dated: August 2, 2024                    Respectfully submitted,


                                         */s/ Mark Roselli*
                                         Mark Roselli (NJ Bar No. 038431988)
                                         Roselli Griegel Lozier, PC
                                         1337 Highway 33
                                         Hamilton, NJ 08690
                                         Telephone: (609) 586-2257
                                         mroselli@roselligriegel.com

                                         Noel J. Francisco (*pro hac vice*)
                                         Megan Lacy Owen (*pro hac vice*)
                                         Christopher C. Pagliarella (*pro hac vice*)
                                         JONES DAY
                                         51 Louisiana Avenue, NW
                                         Washington, DC 20001
                                         Telephone: (202) 879-3939
                                         njfrancisco@jonesday.com
                                         mlacyowen@jonesday.com
                                         cpagliarella@jonesday.com

                                         Jeremy Dys (*pro hac vice*)
                                         Ryan Gardner (*pro hac vice*)
                                         First Liberty Institute
                                         2001 W. Plano Pkwy, Suite 1600
                                         Plano, TX 75075
                                         Telephone: (972) 941-4444
                                         jdys@firstliberty.org
                                         rgardner@firstliberty.org

                                         Camille P. Varone (*pro hac vice*)
                                         First Liberty Institute
                                         1331 Pennsylvania Avenue, NW, Suite 1410
                                         Washington, DC 20004
                                         Telephone: (202) 941-4105
                                         cvarone@firstliberty.org

16

Eric C. Rassbach (*pro hac vice*)
The Hugh and Hazel Darling Foundation
Religious Liberty Clinic
Pepperdine University Caruso School of Law
24225 Pacific Coast Highway
Malibu, CA 90263
Telephone: (310) 506-4611
eric.rassbach@pepperdine.edu

*Attorneys for Plaintiffs*
*The Mendham Methodist Church and The*
*Zion Lutheran Church Long Valley*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 2, 2024, I electronically filed the foregoing brief with the Clerk of the U.S. District Court for the District of New Jersey. Counsel for all parties will be served via CM/ECF.


By: *<u>/s/ Mark Roselli</u>*
Mark Roselli (NJ Bar No. 038431988)


Dated: August 2, 2024